359 S.E.2d 844

**STATE of West Virginia,**

v.

**Gay BARROW.**

No. 16370.

Supreme Court of Appeals of
West Virginia.

July 7, 1987.

Mary Rich Maloy, Asst. Atty. Gen., for appellant.

Frank H. Helvey, Jr., Public Legal Services, Charleston, for appellee.

MILLER, Justice:

The defendant, Gay Barrow, advances several grounds for reversal of his felony convictions of attempted murder of his wife and malicious wounding of an infant child and three misdemeanor convictions of brandishing a pistol, carrying an unlicensed weapon, and destruction of property. The defendant's primary argument is that the circuit court should have suppressed the testimony of a State trooper concerning an incriminating oral statement he made because this statement had been obtained in violation of his Sixth Amendment right to counsel. We begin with a brief chronological account of the facts underlying this assignment of error.

## I.

On the afternoon of April 16, 1982, the defendant's wife, Patty Barrow, and his son, in the company of Joyce Shipe and her infant child, were returning home in an automobile. The defendant's wife was seated on the front passenger side and the infant was riding in a car seat in the middle. As they approached the wife's home just outside of Harpers Ferry, Jefferson County, the defendant, who was in a parked vehicle beside the road, saw her and gave chase. He was able to pass their vehicle, block the road, and cause them to come to a stop. When they attempted to back away, he rammed their car with his vehicle.

He then got out of his car, approached the passenger side of their car, and pointed a pistol toward the passenger door window. Despite his wife's statement that she would go with him and her plea not to fire, the defendant discharged the weapon, shattering the side window. She was not harmed,

but it was later discovered that a sliver of glass had penetrated the diaper of the infant, causing possible permanent injury. The defendant's wife and son then went with the defendant in his jeep.

In response to a police radio dispatch, a State trooper, Steven Reckart, established a roadblock. The defendant managed to evade the roadblock, but was pursued and stopped a short time later. Following a consensual search of his vehicle which produced some bullets and a handgun, the defendant was placed under arrest for carrying an unlicensed weapon. After being advised of his *Miranda* rights, he was placed in the trooper's cruiser and transported directly for initial presentment to a Jefferson County magistrate. During this trip, the defendant upon being asked what had happened stated that he had fired a shot into the vehicle as a result of the marital difficulties he and his wife had been experiencing.[1]

At the magistrate's office, the defendant was charged with multiple offenses and advised of his rights. He indicated a desire to obtain a lawyer and made a telephone call to a local attorney. The magistrate issued a commitment order and Trooper Reckart and a second trooper then transported the defendant to the Jefferson County sheriff's office. There they again advised him of his rights and inquired whether he would be willing to make a statement. He agreed to do so, but did not sign a written waiver of his rights. Before the oral statement could be reduced to writing, his attorney arrived at the sheriff's office and spoke with the defendant concerning the charges. His counsel advised him not to speak to the police and also advised the police not to talk to the defendant. Shortly after the attorney left, the police initiated a further conversation with the defendant resulting in a written incriminating statement.[2]

After an *in camera* evidentiary hearing was conducted prior to trial, the court ruled that the defendant's oral statement made after his initial presentment to a magistrate was admissible into evidence. At trial, Trooper Reckart related the substance of this statement indicating that the defendant said he had purchased the gun at a Western Auto Store at about 10:00 or 10:30 a.m. on the morning of the incident. He had then driven to an area to await his wife's return. When he observed the car she was riding in, he followed it and eventually pulled in front of it causing the vehicle to stop. He rammed the vehicle, fired a shot into the window, and then took his wife and child and drove off.

The defendant took the stand and testified that he had no independent recollection of what occurred and relied on the defense of insanity. He testified at length about the emotional strain he was under due to the breakup of his marriage and the separation from his wife and three children.

## II.

■ The defendant contends that the admission of his oral statement violated his constitutional right to counsel. In *State v. Wyer,* 173 W.Va. 720, 320 S.E.2d 92 (1984), after acknowledging that the United States Supreme Court had never directly decided the issue of the waiver of the Sixth Amendment right to counsel, we proceeded to address the issue. We concluded that it was possible for a defendant to waive his

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is not clear from the record that the defendant made any explicit waiver of his *Miranda* rights. *Miranda* recognized that "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724. In *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), the Supreme Court determined that a waiver could be inferred from " 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " 441 U.S. at 374, 99 S.Ct. at 1758, 60 L.Ed.2d at 293, *quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). We adopted the *Butler* test in Syllabus Point 1 of *State v. Rissler,* 165 W.Va. 640, 270 S.E.2d 778 (1980). This initial oral statement is not challenged on appeal.

2. The prosecution elected not to utilize this written statement at trial.

Sixth Amendment right to counsel in certain circumstances.[3]

After our decision in *Wyer*, the United States Supreme Court decided *Michigan v. Jackson*, 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631, 642 (1986), and concluded that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid" because it was taken in violation of the defendant's Sixth Amendment right to counsel.[4] Because *Wyer* sets a more diminished standard than that set in *Jackson*, we must overrule *Wyer* to this extent. As the Supreme Court stated in *Sims v. Georgia*, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, 598 (1967), "a constitutional rule binding upon the States ... under the Supremacy Clause of Article VI of the Constitution ... must be obeyed."

The Supreme Court also pointed out in *Jackson*, 475 U.S. at 635, 106 S.Ct. at 1410–11, 89 L.Ed.2d at 641–42, that any attempt to secure a written waiver after the defendant's Sixth Amendment right to counsel had attached would be ineffective:

"Finally, the State maintains that each of the respondents made a valid waiver of his Sixth Amendment rights by signing a postarraignment confession after again being advised of his constitutional rights. In *Edwards*, however, we rejected the notion that, after a suspect's request for counsel, advice of rights and acquiescence in police-initiated questioning could establish a valid waiver. 451 U.S., at 484, 68 L.Ed.2d, at 378, 101 S.Ct., at 1830. We find no warrant for a different view under a Sixth Amendment analysis. Indeed, our rejection of the comparable argument in *Edwards* was based, in part, on our review of earlier Sixth Amendment cases. Just as written waivers are insufficient to justify police-initiated interrogations after the request for counsel in a Fifth Amendment analysis, so too they are insufficient to justify police-initiated interrogations after the

**3.** Syllabus Points 3 and 4 of *Wyer* state:

"3. There is no per se rule against a waiver of the Sixth Amendment right to counsel. We do, however, hold that a waiver of the Sixth Amendment right to counsel should be judged by stricter standards than a waiver of the Fifth Amendment right to counsel. Furthermore, we do not equate a general request for counsel at the initial appearance before a magistrate as foreclosing in all cases the right of police officials to initiate a further discussion with the defendant to determine if he is willing to waive his Sixth Amendment right to counsel for purposes of procuring a confession.

"4. Because of the higher standard against which the Sixth Amendment right-to-counsel waiver is measured, we hold that once the Sixth Amendment right to counsel has attached, it can only be waived by a written waiver signed by the defendant. It must also be shown at the time that the waiver is executed that the defendant was aware that he was under arrest and had been informed of the nature of the charge against him. These elements must be shown in addition to the customary *Miranda* warnings."

**4.** We recently recognized the principle of *Jackson* in *State v. Crouch*, 178 W.Va. 221, 358 S.E.2d 782 (1987). In *Crouch*, we had the question of whether *Jackson* permits interrogation if the accused subsequently initiates conversations

or exchanges with the police. We concluded that the trial court's finding that the defendant had initiated a conversation leading to a confession, after he had requested appointed counsel upon presentment to a magistrate earlier that day, was supported by substantial evidence. We found the Supreme Court's reliance on *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), in *Jackson* to be instructive. In *Edwards*, the Supreme Court held that if the defendant voluntarily initiates a further conversation with the police after he has exercised his Fifth Amendment right to counsel that a subsequent valid confession is admissible. We concluded in Syllabus Point 1 of *Crouch*: "For a recantation of a request for counsel to be effective: (1) the accused must initiate a conversation; and (2) must knowingly and intelligently, under the totality of the circumstances, waive his right to counsel." We pointed out in *Crouch* that in order for an initiation by the accused of a further exchange to be effective, the accused "must initiate a conversation which shows an intelligent and knowledgeable desire for a generalized discussion about the investigation. A statement which is merely a necessary inquiry arising out of the incidence of the custodial relationship will not satisfy this test. *See Oregon v. Bradshaw*, 462 U.S. 1039, 1045, 103 S.Ct. 2830 [2835], 77 L.Ed.2d 405 [412] (1983)." 178 W.Va. at 223, 358 S.E.2d at 784. Here there is no question that the police, not the defendant, initiated the conversation leading to the inculpatory statement that was admitted at trial.

request for counsel in a Sixth Amendment analysis." (Footnotes omitted).

The State seeks to avoid the impact of *Jackson* by contending that the defendant's initial appearance before the magistrate after his arrest should not trigger his Sixth Amendment right to counsel. This position is clearly contrary to our statement in *Wyer*, 173 W.Va. at 729–30, 320 S.E.2d at 101, where we quoted from *Brewer v. Williams*, 430 U.S. 387, 397–98, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424, 435–36 (1977): "Consequently, in the present case, the Sixth Amendment right to counsel attached when the defendant was arrested, initially brought before the magistrate, and requested counsel." In *Wyer*, we relied upon *State v. Gravely*, 171 W.Va. 428, 299 S.E.2d 375 (1982), which, in turn, had followed the precepts of *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). *Gravely* concluded in Syllabus Point 1, in part:

> "An adversary judicial criminal proceeding is instituted against a defendant where the defendant after his arrest is taken before a magistrate pursuant to *W.Va.Code*, 62–1–5 [1965], and is, *inter alia*, informed pursuant to *W.Va.Code*, 62–1–6 [1965], of the complaint against him and of his right to counsel." .

The Supreme Court in *Jackson* also reaffirmed its position that the initial appearance before a magistrate after arrest brings into play the Sixth Amendment right to counsel.[5] Accordingly, we adhere to the holdings in *Wyer* and *Gravely* which recognize that the initial presentment of a criminal defendant to a magistrate signals the initiation of adversary criminal proceedings and this brings into play the Sixth Amendment right to the assistance of counsel.

## III.

The State also contends that reversal is not required because the error was harmless beyond a reasonable doubt in view of the other substantial evidence of the defendant's guilt of the offenses. It cites, *Maxey v. Bordenkircher*, 175 W.Va. 49, 330 S.E.2d 859 (1985), where we reiterated in Syllabus Point 1 the established constitutional principle that: ·

> " 'Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt.' Syl. pt. 5, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975)."

We have adopted the harmless constitutional error rule set in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *United States v. Hasting*, 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96, 107 (1983), the Supreme Court framed the issue as follows: "The question a reviewing court must ask is this: Absent the ... [error], is it clear beyond a

---

**5.** This statement is made in note 3 of *Jackson*, 475 U.S. at 629–30, 106 S.Ct. at 1407–08, 89 L.Ed.2d at 638:

> "In *Jackson*, the State concedes that the arraignment represented the initiation of formal legal proceedings, and that the Sixth Amendment attached at that point.... In *Bladel*, however, the State disputes that contention.... In view of the clear language in our decisions about the significance of arraignment, the State's argument is untenable. See, *e.g.*, *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 [436] (1977) ('a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—"whether by way of formal charge, preliminary hearing, indictment, information *or arraignment*" ') (emphasis added), quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 [417] (1972) (plurality opinion).

> See also *United States v. Gouveia*, 467 U.S. [180], at [188], 104 S.Ct. [2292] at [2297] (quoting *Kirby*); *Estelle v. Smith*, 451 U.S. 454, 469–470, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 [373] (1981) (quoting *Kirby*); *Moore v. Illinois*, 434 U.S. 220, 226, 98 S.Ct. 458, 463, 54 L.Ed.2d 424 [432] (1977) (quoting *Kirby*). Cf. *Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed. 158 [164] (1932) ('the most critical period of the proceedings against these defendants' was *'from the time of their arraignment* until the beginning of their trial') (emphasis added). The question whether arraignment signals the initiation of adversary judicial proceedings, moreover, is distinct from the question whether the arraignment itself is a critical stage requiring the presence of counsel, absent a valid waiver. Cf. *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (Alabama arraignment is a 'critical stage')."

reasonable doubt that the jury would have returned a verdict of guilty?"

This harmless error inquiry requires us to consider the evidence properly admitted before the jury and then to assess the probable impact of the admission of the defendant's oral statement. Since the defendant was convicted of several offenses, we must make this inquiry as to the various offenses.

The record reveals that the defendant's wife and the woman who was driving the vehicle gave essentially the same testimony we summarized earlier as to the incident. They stated the defendant's wife told the defendant not to shoot and that she would go with him. He nevertheless fired his pistol after she had leaned back in the seat. They testified that the defendant, upon being informed that he had injured the infant riding in the front car seat, replied he did not care.

The State also presented testimony from the merchant who sold the defendant the pistol on the day the incident occurred. A disinterested resident who had observed the shooting from his back yard was able to identify the vehicles involved in general terms, but could not identify the defendant. He did hear the defendant scream an obscenity a few seconds before pointing the gun and firing into the vehicle. The pistol and ammunition taken from the defendant's vehicle when he was stopped by police were also introduced.

We believe there is a reasonable doubt about whether the jury would have convicted the defendant of attempted murder and malicious wounding had the testimony about the defendant's incriminating oral statement not been presented to the jury. The statement contains factual information not otherwise before the jury which is relevant as to whether the defendant had the requisite criminal intent for attempted murder and malicious wounding. Both of these crimes require a showing of a specific intent. In *State v. Starkey*, 161 W.Va. 517, 523, 244 S.E.2d 219, 223 (1978), in speaking of attempted murder and the element of malice, we said "malice is essentially a form of criminal intent." We referred in

*Starkey*, 161 W.Va. at 522, 244 S.E.2d at 223, to our earlier case of *State v. Gill*, 101 W.Va. 242, 244, 132 S.E. 490, 491 (1926), and stated "we emphasized the necessity of showing a clear intent to commit the underlying crime, where one is charged with the attempt to commit it."

With regard to malicious wounding, we made this statement in *State v. Stalnaker*, 138 W.Va. 30, 41, 76 S.E.2d 906, 912 (1953): "To support a finding of malicious wounding or unlawful wounding under Code, 61–2–9, the intent to produce a permanent disability or disfiguration is an essence of the crimes of malicious wounding and unlawful wounding." *See also State v. Combs*, 166 W.Va. 149, 280 S.E.2d 809 (1980); *State v. Starkey, supra; State v. Meadows*, 18 W.Va. 658 (1881).

As indicated earlier, the defendant's oral statement indicates that he purchased the weapon at 10:00 or 10:30 in the morning. He then drove to a location near his home and awaited the return of his wife. According to his oral confession, the reason he had purchased the weapon was that he wanted to "show them he meant business."

We think it significant that the merchant from whom the defendant purchased the weapon did not testify as to the time of day the purchase was made. Thus, it was the defendant's confession as to the time of the purchase that the prosecution utilized to a distinct advantage during the trial and in closing argument. The defense called Dr. Bradley Soule, a psychiatrist, who testified that although the defendant was sane at the time of the incident, he was under a great deal of emotional stress. Dr. Soule was of the view that the defendant was caught up in an emotionally charged series of domestic events, and probably had not reflected on or "brooded" about his actions.

On cross-examination, the prosecution questioned Dr. Soule as to whether his findings would have been different if the defendant had told him he had purchased the gun at around 10:00 a.m. on the day of the incident. He admitted that this fact would have changed his opinion as to whether the defendant had some chance to pause and think about what he was doing

and how much his emotions had ruled his actions during that day. In closing argument, the prosecution emphasized the evidence that the defendant had purchased the gun in the morning and had gone to wait along the side of the highway for the return of his wife to show the defendant's criminal intent.

Other courts have concluded that harmless constitutional error ordinarily cannot be shown where inadmissible statements of the defendant are utilized on a criminal intent issue and where the prosecution places substantial stress on these statements in his closing argument to the jury. *E.g., Rose v. Engle,* 722 F.2d 1277 (6th Cir.1983), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1353, 84 L.Ed.2d 376 (1985); *State v. Spoon,* 137 Ariz. 105, 669 P.2d 83 (1983) (In Banc); *State v. Ashelman,* 137 Ariz. 460, 671 P.2d 901 (1983); *Drake v. State,* 441 So.2d 1079 (Fla.1983), *cert. denied,* 466 U.S. 978, 104 S.Ct. 2361, 80 L.Ed.2d 832 (1984); *People v. Smith,* 93 Ill.2d 179, 66 Ill.Dec. 412, 442 N.E.2d 1325 (1982), *cert. denied,* 461 U.S. 937, 103 S.Ct. 2170, 77 L.Ed.2d 312 (1983); *State v. Dickens,* 192 N.J.Super. 290, 469 A.2d 965 (1983); *State v. Middleton,* 135 Wis.2d 297, 399 N.W.2d 917 (App.1986). In *Rose,* the defendant had shot his wife, but contended it was accidental. His statements to police which were on appeal found to be inadmissible contradicted the claim of accident and were admitted at trial. This was found not to be harmless error.

We, therefore, conclude that it is not clear beyond a reasonable doubt that the jury would have convicted the defendant of attempted murder and malicious wounding if his incriminating oral statement had not been introduced into evidence.

From our review of the record, however, we conclude that the defendant's oral statement did not have the same bearing on the misdemeanor offenses of brandishing a pistol, carrying an unlicensed weapon, and destruction of property. The direct and circumstantial evidence of these offenses was substantial and these did not involve any specific criminal intent.

## IV.

■ Error is claimed with regard to the court's handling of the preliminary hearing on the insanity issue under W.Va.Code, 27–6A–1(d).[6] It appears that the defendant was initially seen by Dr. Soule, a court-appointed psychiatrist, at the request of the defendant. This was done some nine months prior to trial. On March 3, 1983, the scheduled trial date, the defense attorney requested a hearing on the insanity issue and indicated he was prepared to offer testimony from Dr. LeRoy Stone, a clinical psychologist who had examined the defendant on February 12, 1983. The State agreed to waive the requirement of Rule 12.2(a) of the Rules of Criminal Procedure with regard to the filing of notice of an insanity defense.[7] The court permitted Dr.

**6.** W.Va.Code, 27–6A–1(d), provides:

"Within five days after the receipt of the report on the issue of competency to stand trial, or if no observation pursuant to subsection (b) of this section has been ordered, within five days after the report on said issue following an examination under subsection (a) of this section, the court of record shall make a finding on the issue of whether the defendant is competent for the trial. A finding of incompetence for the trial shall require proof by a preponderance of the evidence. Notice of such findings shall be sent to the prosecuting attorney, the defendant and his counsel. If the court of record orders or if the defendant or his counsel on his behalf within a reasonable time requests a hearing on such findings, a hearing in accordance with section two [§ 27–6A–2] of this article shall be held by the court of record within ten days of the date such finding or such request has been made."

**7.** Rule 12.2(a), W.Va.R.Crim.P., provides:

"*Defense of Insanity.* If a defendant intends to rely upon the defense of insanity at the time of the alleged crime, he shall, within the time provided for the filing of pre-trial motions or at such later time as the court may direct, notify the attorney for the state in writing of such intention and file a copy of such notice with the clerk. If there is a failure to comply with the requirements of this subdivision, insanity may not be raised as a defense. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate."

It should be noted that the insanity defense relates to the criminal responsibility of the de-

Stone to testify and also permitted the filing of Dr. Soule's earlier report which it utilized in arriving at its decision that the defendant was competent to stand trial.

W.Va.Code, 27–6A–1, provides a mechanism for a mental examination of the defendant. It contemplates that after the court-ordered examination is accomplished, the examining psychiatrist "shall forthwith give to the court of record a written signed report of their findings." W.Va.Code, 27–6A–1(c). Upon receipt of such report, the trial court shall within five days, if the defendant has not been sent for observation under subsection (b), make a finding on the defendant's competency to stand trial which is then sent to the defendant and his counsel and the prosecutor. W.Va. Code, 27–6A–1(d). This latter section provides for a hearing in regard to the court's finding upon motion of the defendant or the prosecuting attorney or upon the court's own motion.[8] The procedures for the hearing are contained in W.Va.Code, 27–6A–2.

Here, the statutory procedures were not followed in their allotted times. The judge never received the psychiatric report of Dr. Soule as it was sent only to the defense counsel. Consequently, no initial finding of competency to stand trial was ever made under subsection (d). As a consequence, no timely request was made to challenge the competency finding.

However, we have held that the failure to comply with the time sequences of W.Va.Code, 27–6A–1, will not constitute reversible error. Rather, we have judged these statutory provisions on a rule of reasonableness and considered whether the de-

fendant has been prejudiced, as illustrated by Syllabus Points 1 and 2 of *State v. Church*, 168 W.Va. 408, 284 S.E.2d 897 (1981):

"1. A trial judge's failure to make a finding on the issue of a criminal defendant's competency to stand trial within five days after the filing of a report by one or more psychiatrists or a psychiatrist and a psychologist in compliance with *W.Va.Code*, 27–6A–1(d) [1977], will not be considered to be reversible error requiring a new trial absent prejudice to the defendant resulting from such failure.

"2. Even though a trial judge does not make a finding on the issue of a criminal defendant's competency to stand trial within five days after the filing of a report by one or more psychiatrists or a psychiatrist and a psychologist, the defendant may request a hearing on that issue under *W.Va.Code*, 27–6A–1(d) [1977], at any reasonable time prior to trial."

*See also State v. Audia*, 171 W.Va. 568, 301 S.E.2d 199, *cert. denied*, 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983).

In *State v. Milam*, 159 W.Va. 691, 226 S.E.2d 433 (1976), we pointed out the constitutional basis under the due process clause for requiring an appropriate procedure for determining a defendant's mental competency to stand trial based on *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). In *Milam*, we summarized the procedural due process safeguards approved in *Drope*[9] and impliedly found W.Va.Code,

---

fendant at the time the crime was committed. It is a separate issue from the defendant's mental competency to stand trial which is subject to a competency hearing under W.Va.Code, 27–6A–1(d). The insanity issue is an issue triable before the jury. *State v. Kinney*, 169 W.Va. 217, 286 S.E.2d 398 (1982); *State ex rel. Smith v. Scott*, 167 W.Va. 231, 280 S.E.2d 811 (1981).

**8.** For the provisions of W.Va.Code, 27–6A–1(d), *see* note 6 *supra*.

**9.** *Milam*, 159 W.Va. at 696–97, 226 S.E.2d at 438–39, made this statement about *Drope*:

"The Court indicated that a statutory procedure was constitutionally adequate to protect

the defendant's due process right not to be tried while legally incompetent if the statute: (1) provides that a judge shall on motion or on his own initiative order a psychiatric examination whenever he has reasonable cause to believe that the accused has a mental disease which affects his fitness to proceed; (2) specifies the necessary contents of a report of psychiatric examination; (3) requires the trial court to conduct a hearing if there is a conflict in opinion in the reports of the psychiatric examiners; and (4) authorizes the trial court to hold a hearing on its own motion."

27–6A–1, to be procedurally sufficient under constitutional due process standards. However, these standards do not embrace the specific time periods set out in W.Va. Code, 27–6A–1(d). As to these statutory time periods, we have adopted a standard of reasonable compliance to determine whether the defendant has been prejudiced.

Therefore, the critical question is not whether the time periods in W.Va.Code, 27–6A–1(d), were met, but whether the procedures employed in resolving the defendant's competency to stand trial were reasonable and whether the defendant was prejudiced. Our general test for competency to stand trial is set out in Syllabus Point 1 of *Milam* and is substantially taken from the Supreme Court's mandate in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960):

> "No person may be subjected to trial on a criminal charge when, by virtue of mental incapacity, the person is unable to consult with his attorney and to assist in the preparation of his defense with a reasonable degree of rational understanding of the nature and object of the proceedings against him."

■ The transcript of the hearing reveals that the bulk of Dr. Stone's testimony related to the defendant's insanity at the time of the crime. It appears that this was the main insanity issue urged by the defendant. However, as we have previously noted, the issue of a defendant's mental capacity at the time the crime is committed is not determined by a hearing under W.Va.Code, 27–6A–1(d). *State v. Audia, supra; State ex rel. Smith v. Scott*, 167 W.Va. 231, 280 S.E.2d 811 (1981). The purpose of a hearing under W.Va.Code, 27–6A–1(d), is limited to competency to stand trial.

■ Some questions were asked, particularly on cross-examination, as to the defendant's competency to stand trial. These answers were inconclusive and did not cover the range of factors set out in *Milam*. The trial court also observed that the defendant had in the earlier stages cooperated with his counsel and had assisted him in preparing pretrial motions that had been filed. We do not find that the trial court erred in finding the defendant competent to stand trial.[10]

## V.

■ The defendant also asserts reversible error because the judge refused to grant his disqualification motion. The court noted that the motion was not filed within seven days of the trial date. In this event, under Rule XVII(A)(1)(c), of the Trial Court Rules for Trial Courts of Record, the judge must hold an immediate hearing on the recusal motion to "allow the moving party to make a full record."[11] The judge

**10.** We have in several cases indicated that under W.Va.Code, 27–6A–1(d), where the court has either initially made a finding of competency to stand trial based on psychiatric reports that indicate the defendant is competent to stand trial and the defendant has knowledge of this finding or the reports themselves, his failure to timely request a hearing to challenge the findings and reports may preclude his claiming error. *State v. Davis*, 178 W.Va. 87, 357 S.E.2d 769 (1987); *State v. Schofield*, 175 W.Va. 99, 331 S.E.2d 829 (1985). The federal courts under their mental competency statute, 18 U.S.C. § 4244 (1949), hold that a competency hearing is not required where the evidence does not create a bona fide doubt as to whether the defendant is competent to stand trial. *See United States v. Voice*, 627 F.2d 138 (8th Cir.1980); *United States v. Bradshaw*, 690 F.2d 704 (9th Cir.1982), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983); *United States v. Veatch*, 674 F.2d 1217 (9th Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d

469 (1982); *United States v. Crews*, 781 F.2d 826 (10th Cir.1986); *United States v. Cruz*, 805 F.2d 1464 (11th Cir.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987). *See also Maggio v. Fulford*, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (per curiam). Where a new psychological or psychiatric report shows a lack of competency to stand trial, or there is a conflict in existing reports, the court should hold a hearing. *See State v. Milam, supra. See also Speedy v. Wyrick*, 748 F.2d 481, 487 (8th Cir.1984), *cert. denied*, 471 U.S. 1019, 105 S.Ct. 2028, 85 L.Ed.2d 308 (1985), suggesting that there can be no waiver of mental competency without such a hearing, *citing Pate v. Robinson*, 383 U.S. at 384, 86 S.Ct. at 841, 15 L.Ed.2d at 821.

**11.** The complete text of Rule XVII(A)(1)(c), T.C.R., is:

> "In the event the motion is filed less than seven days prior to the date set for trial, or in

then rules on the motion. We have reviewed the record on this motion and find that the judge was not incorrect in refusing the motion to disqualify.[12] *See State v. Hodges*, 172 W.Va. 322, 326, 305 S.E.2d 278, 282–83 (1983).

As a final ground, the defendant contends he was denied a fair trial by the cumulative effect of the conduct of the judge, the prosecutor, and his own attorney during trial. Since we have already determined the defendant's felony convictions must be reversed for constitutional error, we need not consider whether the defendant was prejudiced on the felony charges. We have previously indicated the evidence against the defendant on the misdemeanor charges can fairly be described as overwhelming. From our examination of the record, we cannot conclude that the exchanges between the various parties rise to a level of reversible error as to the misdemeanor convictions. Many of the exchanges occurred at bench conferences out of the hearing of the jury.

For the reasons stated, we reverse the defendant's convictions of attempted murder and malicious wounding, affirm his misdemeanor convictions, and remand the case to the trial court.

Affirmed, in part, Reversed, in part, and Remanded.

the event the matter is an injunction proceeding or a proceeding for summary contempt, the involved judge shall proceed to have an immediate hearing upon the motion for disqualification, allow the moving party to make a full record and shall then rule upon the motion for disqualification. If the judge overrules the motion for disqualification, he shall proceed with the case. If the motion is sustained, the judge shall proceed no further in the matter and shall forthwith transmit the motion and reason for his ruling to the Chief Justice who shall then appoint another judge." Under Rule XVII(A)(1)(a) and (b), where a motion to disqualify is filed more than seven days prior to the trial date, the judge does not hear the motion, but forwards it to the Chief Justice

of this Court advising whether he will voluntarily recuse himself. If the involved judge does not agree to voluntarily disqualify himself, the rule establishes a procedure for a hearing on the motion by another judge.

**12.** The defendant's main claim for recusal was that the judge had previously as an attorney represented the defendant in a divorce proceeding involving the same woman whom the defendant later remarried. He claimed that he had encountered the judge at a later time about his current marital troubles and alleged that the judge advised him "to take care" of his wife, which the defendant claimed meant that he should shoot her. The judge denied making such a statement.