364 S.E.2d 12

**STATE of West Virginia**

v.

**Clarence R. LUCAS.**

**No. 17330.**

Supreme Court of Appeals of West Virginia.

Dec. 4, 1987.

Thomas L. Clarke, Beckley, W.Va., for Clarence Lucas.

Gayle Fidler, Asst. Atty. Gen., for State.

PER CURIAM:

In this appeal of a first degree sexual assault conviction, the defendant complains of several errors. The more prominent ones are the introduction of a confession after the defendant had been initially arraigned and asked for counsel; and a claim that evidence of collateral crimes was improperly admitted. Finding no reversible error, we affirm the conviction.

The defendant was accused of having sexual intercourse with his stepdaughter on her twelfth birthday, February 6, 1984, at their home. In her testimony, the victim also stated that on some twenty prior occasions the defendant had attempted to have sex with her and that she had fought or pushed him away. She indicated that on some of these prior occasions the defendant did have sex with her despite her attempts to resist. She also stated that on the night in question she did not resist him because she was afraid of him and that he had threatened to kill her if she resisted.

### I.

The defendant's confession was obtained on April 8, 1984.[1] He was arrested on April 5, 1984 and taken before a magistrate where he requested a court-appointed attorney. He was confined to jail as he was unable to make bond. On April 6, 1984, the circuit court appointed counsel after reviewing the defendant's affidavit of indigency.

The circumstances surrounding the giving of the inculpatory statement are in some dispute. The defendant claims that on the morning of April 8, 1984, a Sunday, he asked the jailer to call the detective bureau to find out whether an attorney had been appointed for him.[2] In response to this request, the jailer contacted Deputies Bolen and Goodwin of the Raleigh County Sheriff's Office, and they came to the jail.[3]

The defendant stated that when they arrived, he asked them if he had an attorney appointed and stated he would like to talk to an attorney before making any statements. The defendant claimed that Deputy Bolen had frightened him about what could happen to him if he was incarcerated in the penitentiary on a sexual assault charge, and led him to believe he would obtain psychiatric treatment rather than a penitentiary sentence. According to the defendant, it was this pressure that caused him to sign a waiver of his rights, make the confession, and sign it.

All of this was denied by the deputies. Deputy Bolen stated that when he and Deputy Goodwin arrived at the jail, the defendant indicated he wanted to make a statement, and at that point *Miranda* warnings were given and a written waiver was obtained. This was done at 12:38 p.m. Deputy Bolen also stated that the defendant proceeded voluntarily to talk about the incident and a formal written statement was subsequently taken which the defendant signed. He denied making any threats, but did indicate that near the end of the written confession the question of whether the defendant wanted psychiatric help was discussed.

■ Recently in *State v. Barrow*, 178 W.Va. 406, 359 S.E.2d 844 (1987), we recognized that the United States Supreme Court in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), finally settled the question of whether the Sixth Amendment right to counsel, once attached, could be waived at a subsequent

---

1. An earlier statement was given to Deputy Bolen on April 6, 1984, but this statement was largely exculpatory and not admitted. A written waiver of rights was signed by the defendant before this statement was taken.

2. Apparently, the Raleigh County Sheriff's Office had a detective bureau staffed by several deputy sheriffs.

3. The defendant admits in his brief that he asked the jailer to call a detective to find out the status of his lawyer. This was his testimony at trial. In the initial *in camera* hearing on the validity of the confession, the defendant denied asking to see anyone. The jailer on duty on April 8, 1984, a Gordon Gregory, did not testify at the suppression hearing, but did testify at trial. He stated that the defendant had asked him to call either Deputy Bolen or some other deputy, and that the defendant did not state why he wanted to talk to the deputy.

police-initiated interrogation. The Supreme Court held that under such circumstances a waiver could not be obtained. Consequently, any confession resulting from such a procedure was inadmissible. We summarized this principle in Syllabus Point 1 of *Barrow:*[4]

> "If police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid because it was taken in violation of the defendant's Sixth Amendment right to counsel. To the extent that *State v. Wyer,* [173] W.Va. [720], 320 S.E.2d 92 (1984), is in conflict with this principle, it is overruled."[5]

*Jackson* dealt with a police-initiated interrogation. It did not answer the question of whether the defendant may waive his Sixth Amendment right to counsel by initiating a conversation with the police.

We decided this issue in *State v. Crouch,* 178 W.Va. 221, 358 S.E.2d 782 (1987), by noting that the Supreme Court in *Jackson* relied heavily on *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which involved the Fifth Amendment right to counsel during custodial interrogation.[6] At issue in *Edwards* was whether a defendant who requests counsel can subsequently be approached by the police, waive this right and render a subsequent valid confession.

To protect the Fifth Amendment right to counsel, *Edwards* held that a police-initiated request is improper and that a waiver and subsequent confession are invalid. It did, however, point out that "[h]ad Edwards initiated the meeting on January 20, nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at trial." 451 U.S. at 485, 101 S.Ct. at 1885, 68 L.Ed.2d at 387.

We determined in *Crouch* that this aspect of *Edwards* would be applicable to a defendant-initiated conversation after the Sixth Amendment right to counsel had attached, and stated in Syllabus Point 1:

> "For a recantation of a request for counsel to be effective: (1) the accused must initiate a conversation; and (2) must knowingly and intelligently, under the totality of the circumstances, waive his right to counsel."

We also explained in *Crouch* that the accused "must initiate a conversation which shows an intelligent and knowledgeable desire for a generalized discussion about the investigation. A statement which is merely a necessary inquiry arising out of the incidence of the custodial relationship will not satisfy this test. *See, Oregon v. Bradshaw,* 462 U.S. 1039, 1045, 103 S.Ct. 2830, [2835], 77 L.Ed.2d 405, [412] (1983)." 178 W.Va. at 223, 358 S.E.2d at 784.[7]

Here, as in *Crouch,* there was a conflict with regard to the events surrounding the April 8 confession. The trial court resolved that factual conflict in favor of the State and found the defendant had initiated the conference and indicated a willingness to make a statement about the

---

**4.** The first sentence of Syllabus Point 1 of *Barrow* was taken from this holding in *Jackson:*

"We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." 475 U.S. at 636, 106 S.Ct. at 1411, 89 L.Ed.2d at 642.

**5.** In *State v. Wyer, supra,* overruled in part by *State v. Barrow, supra,* we dealt with this issue and concluded that a waiver could be obtained under certain conditions.

**6.** This right was first established in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**7.** In line with *Crouch, supra,* several other jurisdictions have since *Michigan v. Jackson, supra,* held that a defendant-initiated conversation about the crime and subsequent voluntary waiver will render the confession admissible. *E.g., Tucker v. Kemp,* 818 F.2d 749 (11th Cir.) (per curiam), *cert. denied,* 481 U.S. 1063, 107 S.Ct. 2209, 95 L.Ed.2d 863 (1987); *Housel v. State,* 257 Ga. 115, 355 S.E.2d 651 (1987); *People v. Kvam,* 160 Mich.App. 189, 408 N.W.2d 71 (1987).

crime. The execution of a written *Miranda* waiver after being informed of his rights is not disputed. From a review of the proceeding, we cannot say that the trial court's ruling admitting the confession in evidence was plainly wrong or clearly against the weight of the evidence, which is our traditional test, as illustrated by Syllabus Points 2 and 4 of *State v. McDonough,* 178 W.Va. 1, 357 S.E.2d 34 (1987):

"2. 'The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case.' Syl. Pt. 5, *State v. Starr,* 158 W.Va. 905, 216 S.E.2d 242 (1975).

"4. 'A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.' Syl. Pt. 3, *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978)."

We, therefore, find no error on this point.

## II.

The defendant argues that the prosecution's several questions to the victim about prior episodes of forced sexual relations by the defendant violated the collateral crime bar, and particularly the admonitions in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). In *Dolin,* we dealt with first degree sexual assault by a father upon his eleven-year-old daughter, where evidence was introduced of some six separate prior incidents of sexual misconduct, as well as another incident which took place several years after the offense charged in the indictment.

■ We pointed out in Syllabus Point 7 of *Dolin* that "[i]t is impermissible for col-

lateral sexual offenses to be admitted into evidence solely to show a defendant's improper or lustful disposition toward his victim." The collateral crime evidence in *Dolin* had been admitted under the "system, motive and intent" exception to the collateral crime bar.[8] We found them not to be applicable under the facts, particularly where the victim was under the age of consent such that forcible compulsion was not an element of the crime. *See,* W.Va. Code, 61–8B–3(a)(3) (1976). We took pains to state in Note 13 of *Dolin:*

"Obviously, where a collateral offense tends to prove a necessary element of the sexual offense, such evidence should be admitted for that purpose. For example, in Syllabus Point 4 of *State v. Pancake, supra,* we held: 'Evidence that a defendant committed violent or turbulent acts toward a rape victim or toward others of which she is aware, is relevant to establish her fear of her attacker that is a major element of proof of first-degree sexual assault. W.Va.Code, 61–8B–1(1)(b).' *See also State v. Miller,* [175] W.Va. [616], 336 S.E.2d 910, 917 (1985). Because the sexual assault conviction in the present case was based upon the age of the victim rather than the victim's fear of her attacker, this element of first degree sexual assault is not applicable to the present case."

■ Here the victim was over the age of eleven and, therefore, forcible compulsion was an element of the State's case. At the *in camera* hearing on the issue of collateral crimes, the prosecutor's position was that these prior sexual acts were offered to prove the element of forcible compulsion. The forcible compulsion issue was critical to the State's case because at the time of the crime the victim did not resist or cry-out.[9] The testimony elicited was brief, there was no description as to any particu-

8. The exceptions to the collateral crime bar are set out in Syllabus Point 12 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974):

"The exceptions permitting evidence of collateral crimes and charges to be admissible against an accused are recognized as follows: the evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or

more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial."

9. "Your Honor, at this point, the only evidence the State intends to put on on direct regarding collateral crimes, or even uncharged misconduct, addresses the issue of forcible compulsion; and that is to show a

lars of the prior acts, and the victim related that in these instances she had tried to physically resist the defendant. It should also be noted that the court instructed the jury at the beginning of the testimony that it not be used "to prove or establish that he, the defendant, violated the law on some other occasion. And I caution you very seriously not to consider it for that purpose." We find that there is no reversible error on this point.

## III.

## OTHER ERRORS.

### A.

Defendant asserts that there was insufficient evidence to find that the victim was not the voluntary social companion of the defendant. We disposed of this same argument in Syllabus Point 2 of *State v. Allman*, 177 W.Va. 365, 352 S.E.2d 116 (1986):

> "Where a child is in the care of a supervisory adult, the child is not the 'voluntary social companion' of the adult within the meaning of W.Va.Code § 61–8B–3 (1981)."

*See also, State v. Hamilton*, 501 A.2d 778 (Del.Super.1985), *aff'd*, 515 A.2d 397 (Del. 1986).

The defendant recognizes the controlling effect of *Allman*, but asks us to reconsider our position. We decline to do so.[10]

### B.

The final assignment of error relates to the venue of the crime.[11] The State main-

tained that the home where the defendant lived at the time the crime was committed was located in Egeria, which is in Raleigh County. The defendant's wife and the deputy sheriff investigating the case testified that the residence was located in Raleigh County. This was controverted by several defense witnesses, including one who testified from a survey map that the home was in Mercer County. Also the owner of the home stated it was in Mercer County and produced tax tickets from the Mercer County Sheriff's office.

 The defendant sought to introduce a United States geological survey map. The court apparently refused to admit the map on the theory that it was not properly authenticated to reflect county lines. We note that this evidence was cumulative, and adhere to our traditional rule set out in Syllabus Point 10 of *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955).

> "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion."

 In a related vein, the defendant sought to introduce the victim's school attendance record at the Lester Elementary School which is located in Raleigh County. The court refused to admit this record on the basis that it did not show her home

---

course of conduct by this defendant that would establish, on the night in question, his verbal threats amounted to the express or implied threat of intimate [sic] bodily injury or death that the State is required to prove. There are instances that the State would anticipate putting into evidence in its case in chief of prior sexual intercourse between this defendant and this particular victim.... Because one of the things that the State is going to have to address is why this child didn't cry out on February 6, 1984; and why she didn't cry out to protect herself at that time; she didn't immediately report it to her mother afterwards."

10. It should be noted that the term "voluntary social companion" was removed from our first degree sexual assault statute, W.Va.Code, 61–8B–3, by the 1984 amendments which were effective July 1, 1984. 1984 Acts of the Legislature, ch. 56.

11. Both parties recognize our prior holding set out in Syllabus Point 3 of *State v. Manns*, 174 W.Va. 793, 329 S.E.2d 865 (1985):

> " 'The State in a criminal case may prove the venue of the crime by a preponderance of the evidence, and is not required to prove the same beyond a reasonable doubt.' Syllabus Point 5, *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979)."

address. The defendant himself testified that on February 6, the date of the crime, the family was living in Lester, but this was in Raleigh County. We conclude the refusal to admit the attendance record was not prejudicial to the defendant.

For the foregoing reasons, the judgment of the Circuit Court of Raleigh County is affirmed..

Affirmed.