366 S.E.2d 657

**STATE of West Virginia**

v.

**Michael N. TENLEY.**

No. 17427.

Supreme Court of Appeals of West Virginia.

Feb. 24, 1988.

---

210

Paul T. Camilletti, Camilletti and Sacco, Wheeling, for Michael N. Tenley.

Mary Rich Malloy, Charleston, for State of W.Va.

PER CURIAM:

This case is before the Court upon the appeal of Michael N. Tenley from his conviction of first degree murder, with a recommendation of mercy. It arises from two orders from the Circuit Court of Marshall County which denied the appellant's two motions for a new trial. The appellant contends that the trial judge committed reversible error when he admitted into evidence the appellant's confession which was obtained in violation of his previously asserted right to counsel. We agree and reverse.

On July 13, 1985, Mrs. Deborah Tenley called local emergency personnel to assist Eugene McKinney, victim of a stabbing which occurred at her home in Marshall County, West Virginia.[1]

Two Marshall County deputies arrived at the scene and questioned Mr. and Mrs. Tenley. Both gave voluntary statements. Mrs. Tenley stated that McKinney, intoxicated, staggered toward her while the two were quarrelling in the bathroom, and

1. Mr. and Mrs. Tenley were separated at the time the stabbing occurred.

threatened to kill her. At that time, she grabbed a twelve-inch butcher knife and stabbed him. Mrs. Tenley believed she had cut McKinney's wrist, but noticed blood on his shirt. She summoned her husband, the accused, Michael Tenley, who was in another area of the home, sleeping. She stated that Mr. Tenley, an emergency medical technician, attempted CPR and told her to summon an ambulance.

Mr. Tenley's voluntary statement concerning his role in the event paralleled that of Mrs. Tenley. When these statements were given, McKinney was still alive and undergoing emergency treatment.

The Tenleys agreed to further interviews at the Sheriff's Department. At this time the local hospital called the Sheriff's Department and informed the investigating officers that McKinney died. Mrs. Tenley was charged with first degree murder. The officers informed Mr. Tenley of the charge against his wife, at which time Tenley asked if he could change his statement. The changes in his second statement were that he had advised Mrs. Tenley to clean the knife and the bathroom and that although he performed resuscitative efforts upon McKinney, the ambulance was not summoned for some 30 to 45 minutes after the stabbing occurred.

Based on this revised statement, Mr. Tenley was taken before a magistrate and charged with being an accessory before the fact to murder.

When the magistrate informed Tenley of his right to appointed counsel, Tenley asserted it. He completed all appropriate forms indicating his desire to have counsel appointed.

The accused remained in the county jail overnight. The following day, the investigating officers received the coroner's report concerning the manner and cause of McKinney's death. The coroner noted a laceration of the right wrist and an 8½ inch-deep wound, at a 45° downward angle, running from the victim's right diaphragm to the liver. The cause of death was massive internal bleeding.

The investigating officers concluded that the depth and angle of the wound made it unlikely that Mrs. Tenley could have stabbed McKinney, as she was substantially smaller than he. Therefore, with this information as to the manner of the stabbing, one of the investigating officers testified (at the suppression hearing) that: "Mr. Tenley was brought back [from his cell to an interrogation room] ... I informed him that I felt that there was a possibility that he might have committed the murder."

After being informed of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Tenley stated that he did not murder McKinney and refused to discuss the case further. One of the investigating officers testified (at the suppression hearing) that: "[w]e started to leave for the day ... and I looked at Deputy Grimm and I said 'Let's talk to him one more time.' "

Again Tenley was provided his *Miranda* rights, and at this point, he signed a waiver. The investigating officers recalled that Tenley prefaced his statement with questions concerning the different elements and degrees of punishment for first and second degree murder. They also testified that Tenley said something to the effect that before making a statement he probably should have his attorney present.

Tenley then signed a statement in which he recounted the events on the night of the stabbing. He stated that Mrs. Tenley summoned him to attend McKinney, who she had "cut." He then examined McKinney, and informed Mrs. Tenley that he would be alright. As his wife left the room, he got on his knees [victim presumably on floor] and used both hands to stab McKinney "in the side."

The warrant against Mrs. Tenley was dismissed, and no further prosecution of her has occurred. Mr. Tenley's accessory warrant was dismissed, and he was indicted for first degree murder.

Prior to trial, a suppression hearing was conducted concerning the confession. Defense counsel argued that the accused had asserted his Sixth Amendment right to counsel at the initial appearance, and that the subsequent waiver was not knowing

and intelligent. The trial judge ruled that the confession was admissible, relying on syllabus points 3 and 4 of *State v. Wyer,* 173 W.Va. 720, 320 S.E.2d 92 (1984).[2] The trial judge found that the officers could initiate a further interrogation after the defendant had asserted the right to counsel, and that the defendant was fully advised of his rights and intelligently waived them.

At trial, the only evidence the State introduced was the confession, testimony that the Tenleys were estranged and McKinney had been dating Mrs. Tenley for some time, and the testimony of pathologist, Dr. Scott. During cross-examination and re-direct examination, Dr. Scott testified that the injury to the wrist and diaphragm could have been inflicted at the same time, if the victim were lunging at someone in a bent position. He also testified that given the massive loss of blood due to internal bleeding, the victim's .12% blood-alcohol content was "in all probability" closer to .24%. Mr. Tenley was called for the defense and testified that he did not stab McKinney but merely attended to him.

I

■ The accused contends he is entitled to a retrial due to the recent decision, *Michigan v. Jackson,* 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631, 642 (1986), which states "[i]f police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of the right to counsel, any waiver of the defendant's right to counsel for that police initiated interrogation is invalid."

In *Wyer* this Court held that a waiver was possible when the police initiated an interrogation subsequent to the assertion of the right to counsel. Syl. pt. 4, *Wyer,* 173 W.Va. 720, 320 S.E.2d 92 (1984). Acknowledging that the constitutional protection this Court provided in *Wyer* was "more diminished" than that of *Jackson,* this Court overruled *Wyer* to the extent that it did not meet supremacy clause considerations in syllabus point 1 of *State v. Barrow,* 178 W.Va. 406, 359 S.E.2d 844 (1987):

If police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid because it was taken in violation of the defendant's Sixth Amendment right to counsel. To the extent that *State v. Wyer,* [173] W.Va. [720], 320 S.E.2d 92 (1984), is in conflict with this principle, it is overruled.

Since the accused asserted his right to counsel at the initial appearance and the police officers, by their own admission, subsequently initiated an interrogation, we find that the defendant's waiver of the right to counsel is invalid, as it violated the accused's Sixth Amendment right to counsel. Therefore, the trial judge erroneously admitted the confession into evidence.

II

■ The State contends that this Court should not apply the holding in *Jackson* and adopted in *Barrow,* to the accused's case because it would require the Court to give limited retroactive effect to *Barrow.*

The State, relying on *United States v. Johnson,* 457 U.S. 537, 549, 102 S.Ct. 2579,

---

**2.** Syllabus points 3 and 4 of *Wyer* state:

3. There is no per se rule against a waiver of the Sixth Amendment right to counsel. We do, however, hold that a waiver of the Sixth Amendment right to counsel should be judged by stricter standards than a waiver of the Fifth Amendment right to counsel. Furthermore, we do not equate a general request for counsel at the initial appearance before a magistrate as foreclosing in all cases the right of police officials to initiate a further discussion with the defendant to determine if he is willing to waive his Sixth Amendment right to counsel for purposes of procuring a confession.

4. Because of the higher standard against which the Sixth Amendment right-to-counsel waiver is measured, we hold that once the Sixth Amendment right to counsel has attached, it can only be waived by a written waiver signed by the defendant. It must also be shown at the time that the waiver is executed that the defendant was aware that he was under arrest and had been informed of the nature of the charge against him. These elements must be shown in addition to the customary *Miranda* warnings.

2586–7, 73 L.Ed.2d 202, 214 (1982), contends that *Jackson* represents a "clear break" with past precedent and therefore is not entitled limited retroactivity.[3]

At the time of trial, *Wyer* controlled, and the accused moved to suppress the statement based on the validity of the waiver. At the time the defendant moved for a new trial, *Jackson* had been decided and the accused again based his motion on the validity of the waiver under *Jackson* and *Wyer*. While the accused's appeal was pending, *Wyer* was limited to conform with *Jackson* in *Barrow*.

The accused both preserved the error at trial and was in the appeal process at the time the ruling of *Jackson* was adopted in *Barrow*; therefore, he is entitled to its application to his case. *State v. Kopa*, 173 W.Va. 43, 49, 311 S.E.2d 412, 418 (1983); *Bowman v. Leverette*, 169 W.Va. 589, 602, 289 S.E.2d 435, 442, n. 8 (1982).

### III

"Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. pt. 5, *State ex rel. Grob v. Bailey*, 158 W.Va. 647, 214 S.E.2d 330 (1975).' Sylla-

bus Point 1, *Maxey v. Bordenkircher*, [175] W.Va. [49], 330 S.E.2d 859 (1985). Syl. pt. 3, *State v. Barrow*, 178 W.Va. 406, 359 S.E.2d 844 (1987).

 At trial, the only evidence linking the accused to the murder other than the confession was the physical improbability that his wife, the only other adult at the residence during the time of the stabbing, could have committed the crime. The pathologist's testimony supported both the State's theory of the case as well as Mrs. Tenley's statement as to what had transpired on the evening of the stabbing. In closing argument, the State relied almost exclusively on the accused's confession. Therefore, we cannot say that the introduction of the illegally obtained confession was not harmless, beyond a reasonable doubt.

Based on all the foregoing, we find that the trial court committed reversible error when it admitted the illegally obtained confession into evidence. Therefore, we reverse and remand this case to the Circuit Court of Marshall County.

Reversed and remanded.

---

**3.** In *Johnson* the U.S. Supreme Court applied limited retroactivity of the Fourth Amendment ruling in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) to cases on direct review when the *Payton* decision was made. However, the Court, applying the three-factor analysis for determining retroactivity in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), noted that, under these factors certain cases, even though on direct appeal at the time a new ruling was rendered, were not entitled to retroactive application of the new rule. Specifically, where a ruling represents a "clear break" with past precedent or an arguably sanctioned practice, then two of the *Linkletter/Stovall* factors, "reliance by law enforcement authorities ... and the effect on the administration of justice have virtually compelled a finding of non-retroactivity. [citations omitted]" even for cases on direct review at the time the new ruling is announced. *Johnson*, 457 U.S. 537, 549–50, 102 S.Ct. 2579, 2586–7, 73 L.Ed.2d 202, 214.

The court recently readdressed the "clear break" ruling of *Johnson* in *Griffith v. Kentucky*,

479 U.S. 314, 107 S.Ct. 708, 93 L.Ed. 649 (1987). In *Griffith*, the accused sought to apply the ruling in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which was decided while his case was on direct review. The court had previously denied retroactivity of *Batson* in a habeas corpus petition because, among other reasons, *Batson* "is an explicit and substantial break with prior precedent." *Allen v. Hardy*, 478 U.S. 255, 258, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199, 204 (1986). Therefore, unlike the facts of *Johnson*, the accused in *Griffith* could not assert that the new rule was not a clear break with past precedent. The court found that *Johnson*'s use of the *Linkletter/Stovall* three-factor analysis for developing the "clear break" exception was inappropriate. *Griffith*, 479 U.S. 314, 326, 107 S.Ct. 708, 715, 93 L.Ed.2d 649, 660–61. In a 6–3 decision, the court stated: "We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed. 649, 661.