IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1675

_____

**FILED**

**June 13, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent

v.

WILLIAM BEVEL,
Petitioner

_____

Appeal from the Circuit Court of Marshall County
The Honorable David W. Hummel, Jr., Judge
Criminal Action No. 11-F-43

REVERSED AND REMANDED

_____

Submitted: April 17, 2013
Filed: June 13, 2013

John R. Anderson, Esq.                   Patrick Morrisey
Assistant Public Defender                Attorney General
Moundsville, West Virginia               Laura Young, Esq.
Counsel for the Petitioner               Assistant Attorney General
                                         Marland L. Turner
                                         Assistant Attorney General
                                         Charleston, West Virginia
                                         Counsel for the Respondent

CHIEF JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE WORKMAN and JUSTICE LOUGHRY dissent and reserve the right to file dissenting opinions.

SYLLABUS BY THE COURT

1.     "On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo.* Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. pt. 3, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994).

2.     "For a recantation of a request for counsel to be effective: (1) the accused must initiate a conversation; and (2) must knowingly and intelligently, under the totality of the circumstances, waive his right to counsel." Syl. pt. 1, *State v. Crouch*, 178 W. Va. 221, 258 S.E.2d 782 (1987).

3.     "If police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid because it was taken in violation of the defendant's Sixth Amendment right to counsel. To the extent that *State v. Wyre*, 173 W.Va. 720, 320 S.E.2d 92 (1984), is in conflict with this principle, it is overruled." Syl. pt. 1, *State v. Barrow*, 178 W. Va. 406, 359 S.E.2d 844 (1987).

i

4.    "An appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." Syl. pt. 2, *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 207 S.E.2d 169 (1974).

5.    If police initiate interrogation after a defendant asserts his right to counsel at an arraignment or similar proceeding, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid as being taken in violation of the defendant's right to counsel under article III, section 14 of the Constitution of West Virginia.

Benjamin, Chief Justice:

Consistent with the United States Supreme Court's decision in *Michigan v. Jackson*, 475 U.S. 625 (1986), this Court has held it to be a violation of a defendant's right to counsel for the police to initiate interrogation after the defendant has asserted his right to counsel at an arraignment or similar proceeding, even if the police procure a waiver of the right to counsel from the defendant. In 2009, the U.S. Supreme Court issued *Montejo v. Louisiana*, 556 U.S. 778 (2009), which overruled their decision in *Michigan v. Jackson*. The *Montejo* court held that it does not violate a defendant's right to counsel under the Sixth Amendment to the United States Constitution for the police to approach and interrogate a defendant after he has asserted his right to counsel at an arraignment or similar proceeding if a valid waiver is obtained.

In the instant case, the petitioner, William Bevel, requested that counsel be appointed to him at his arraignment. However, prior to receiving an opportunity to confer with his counsel, Mr. Bevel was approached by a police officer and asked to sign a waiver of his right to counsel. Mr. Bevel signed the waiver and proceeded to make inculpatory statements to the police. In its October 26, 2011, order, the circuit court denied Mr. Bevel's motion to suppress the statements, finding that the interrogation was not conducted in violation of his right to counsel pursuant to *Montejo*. The question now before this Court is whether West Virginia will continue to follow our existing precedent

1

or whether we will instead adopt the conclusions and rationale of the U.S. Supreme Court in *Montejo*.

We have thoroughly reviewed the record presented, the briefs, the relevant legal authorities, and the arguments of Mr. Bevel and the State. For the reasons provided herein, we decline to adopt *Montejo* and find that the right to counsel that has been recognized in this state for more than a quarter century continues to be guaranteed by article III, section 14 of the West Virginia Constitution. Consequently, we find that the circuit court erred by failing to suppress the inculpatory statements made by Mr. Bevel We therefore reverse the circuit court's November 2, 2011, conviction and sentencing order, and we remand the case for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Before we begin our description of the facts in this case, we call attention to the point that the underlying order of the circuit court is devoid of factual findings. Furthermore, the parties' briefs include few facts about the victim or the events leading up to Mr. Bevel's arrest. The following relevant background information has been gleaned from documents included in the appendix record provided to this Court by the petitioner.

2

The victim in this case, a child named S.H.,[1] was born on May 6, 2005. After her birth, she lived with her mother, Carrie Bevel, and then with both her mother and the petitioner, Mr. Bevel. On February 2, 2008, when S.H. was two years old, she was placed in the legal custody of her grandmother, Tammy H. The change in custody was pursuant to an abuse and neglect proceeding brought against Ms. Bevel. alleging that the home was unsafe for S.H. due to lack of heat and broken glass. Ms. Bevel and Mr. Bevel were married on February 19, 2008.

Sometime in September or October of 2008, Tammy H. witnessed S.H. "acting out sexually." Tammy H. promptly contacted the state police and Harmony House.[2] Employees of Harmony House conducted multiple interviews of S.H., the results of which were provided to investigating police officers in December of 2010. During the interviews, S.H. revealed that Ms. Bevel and Mr. Bevel had touched her in a sexual manner while she was in their care. Using dolls that represented her and Mr. Bevel, S.H. indicated that Mr. Bevel had penetrated her vagina with his penis and with his fingers.

---

[1] Consistent with this Court's practice in cases involving sensitive matters, we refer to the parties using their initials.

[2] Harmony House is located in Wheeling, West Virginia. According to its website, "[t]he mission of Harmony House is to create and sustain a fully operational Children's Advocacy Center (CAC) for Ohio and Marshall Counties, West Virginia and Belmont County, Ohio to serve child victims and non-offending family members in a neutral, child-focused environment." Harmony House, http://harmonyhousecacwv.org/ (last visited May 23, 2013).

Pursuant to the December 14, 2010, criminal complaint of the Magistrate Court of Marshall County, which alleged that Mr. Bevel had sexually abused S.H., a warrant was issued for Mr. Bevel's arrest. Upon his arrest, he was taken to the Northern Regional Jail & Correctional Facility.

On December 17, 2010, a Marshall County magistrate conducted Mr. Bevel's initial appearance via closed circuit video conferencing. During the initial appearance, Mr. Bevel was given a form titled "Initial Appearance: Rights Statements." The first page of the form included the following:

> DEFENDANT MUST INITIAL ONE OF THE FOLLOWING THREE CHOICES IF A JAIL PENALTY IS POSSIBLE:
>
> _____ (a) I give up my right to have an attorney represent me.
> _____ (b) I want to hire an attorney to represent me.
> _____ (c) I want an attorney appointed to represent me.

Mr. Bevel placed his initials next to the third option, requesting that counsel be appointed to him. The form was faxed to the magistrate. The dates and times imprinted on the form as a result of the faxing process suggest that the initial appearance occurred sometime between 10:00 a.m. and noon.

At approximately 1:00 p.m. that same day, police officers took Mr. Bevel to an interrogation room in the jail. He was then provided with a one-page form which

4

described his rights with regard to interrogation. The first portion of the form, titled

"<u>YOUR RIGHTS</u>", said:

>You have the right to remain silent and refuse to answer questions
>
>Anything you say can be used against you in court.
>
>You have the right to talk to a lawyer for advice before we ask you any questions and to have your lawyer with you during questioning.
>
>If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.
>
>If you decide to answer questions now without a lawyer present, you still have the right to stop answering at any time until you talk to a lawyer.
>
>I have been advised that I am to be questioned about <u>Sexual Assault Charges</u>.
>
>I understand that I am under arrest for the crime(s) of <u>Sexual Assault Charges</u> and that I have the right to taken [sic] to a magistrate and arraigned on this charge or charges without delay. If taken before a magistrate, I would have the following rights explained to me:
>
>1. I would be informed of the charges against me and have the charges read and explained to me. I would be explained the penalties that the Court may impose should I be found guilty of those charges.
>
>2. That I would have the right to a jury trial on all charges lodged against me.
>
>3. That, under the United States Constitution and the Constitution and laws of the State of West Virginia, I do not have to say anything to the law enforcement officer, to the magistrate, or to the judge, which might tend to incriminate me.
>
>4. That anything I say, write, or sign may be introduced into evidence at any trial in connection with the charges against me.
>
>5. That I have the right to have the assistance of counsel during criminal proceedings against me and that if I cannot afford counsel, the State will supply me with counsel at no cost.
>
>6. That no person other than a lawyer can represent me during these proceedings.

7. That if I decide to represent myself in the trial of the charges against me, I cannot later claim that I was deprived of my right to a lawyer.

8. That I have a right to a preliminary examination by a magistrate if the charges against me are presented to a Grand Jury for indictment. At such a preliminary examination, I can call witnesses to testify and may cross-examine any witness.

That I would have the right to communicate with my lawyer, a relative, or any other person to obtain a lawyer or to arrange bail.

(Underlined text indicating a handwritten entry onto the form). Sergeant Ross Lockhart testified that he read this portion of the form aloud to Mr. Bevel because Mr. Bevel asserted that he has difficulty reading.[3] Mr. Bevel was then presented with the option to sign next to one of two options: "I understand my rights" or "I do not wish to answer any questions or make any statements at this time." Mr. Bevel placed his signature next to the first option: "I understand my rights."

Sgt. Lockhart then proceeded to read aloud to Mr. Bevel the final paragraph on the form, titled "WAIVER OF RIGHTS". This section stated:

I have had this statement of my rights read to me and I fully understand what my rights are, and I hereby waive said rights. I am willing to make a statement and to answer questions before being taken to a magistrate. I do not want a lawyer at this time. I understand and know what I am doing.

---

[3] According to a March 29, 2010, report of a psychological evaluation of Mr. Bevel, he reads on a third grade level, and his IQ is 68. The report describes Mr. Bevel as being "mentally retarded."

> No promises or threats have been made to me and no pressure
> or coercion of any kind has been used against me.

Mr. Bevel placed his signature on the signature line following the waiver-of-rights paragraph.

During the interrogation, Mr. Bevel made incriminating statements, admitting that he digitally penetrated S.H. while Ms. Bevel simultaneously manually stimulated his penis.

The grand jury returned an indictment against Mr. Bevel on July 19, 2011. The indictment charged Mr. Bevel with sexual abuse by a custodian, parent or person in a position of trust; incest; first degree sexual assault; and displaying obscene matter to a minor.

The State filed a motion to determine the voluntariness of Mr. Bevel's statements to the police officers during the December 17, 2010, interrogation. Mr. Bevel then filed a motion to suppress those statements. An evidentiary hearing was held on October 17, 2011, to address the admissibility of Mr. Bevel's incriminating statements. During that hearing, the court heard testimony on the motions from the interviewing officers and from the magistrate presiding over Mr. Bevel's initial hearing. Near the conclusion of the hearing, the court said,

7

So I think the -- the argument proverbially -- is proverbially dead in the water, but I will allow an opportunity to brief it. I think the gap in time between the initial appearance and the State's agents going to do the interview may have been sufficient, and that at that time Mr. Bevel failed to reassert his right to counsel.

In the order memorializing the evidentiary hearing, dated October 18, 2011, the court said, "Further, the court placed on the record that the typed interview of December 17, 2010, has been thoroughly read by the Court, however it is the **COURT'S FINDING** on this day, that the Statement of December 17, 2010 is **DEFERRED**, at this time."

By order dated October 26, 2011, the court denied Mr. Bevel's motion to suppress:

In support of the Court's determination as set forth in this order, it applies *Montejo v. Louisiana*, 556 U.S. 778, 129 S.Ct. 2079 (2009) and finds that Mr. Bevel's Sixth Amendment right to counsel was not violated.

Furthermore, on December 17, 2010, Mr. Bevel, prior to making the subject statement(s) to law enforcement, did (in the totality of the circumstances) willingly, knowingly, and intelligently waive his right to be represented by counsel during the custodial interrogation. Accordingly, neither Mr. Bevel's Fifth nor his Sixth Amendment right to counsel were [sic] violated.

(In part).

8

On October 31, 2011, Mr. Bevel entered a *Kennedy* plea,[4] whereby he pleaded guilty to sexual abuse by a parent, guardian, custodian, or person in a position of trust, while preserving his right to seek an appeal of the denial of his motion to suppress his December 17, 2010, statement. By order dated November 2, 2011, he was sentenced to not less than ten nor more than twenty years in the West Virginia Penitentiary for Men. His sentence requires that he register as a sex offender for life upon his release from the penitentiary and that he serve a period of supervised release.

Mr. Bevel now appeals the circuit court's November 2, 2011, conviction and sentencing order, arguing that the circuit court erred by denying his motion to suppress his December 17, 2010, statement.

## II.

### STANDARD OF REVIEW

On appeal, Mr. Bevel's challenge involves suppression of an inculpatory statement. We have held,

> On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo.* Factual determinations upon which these legal conclusions are based

---

[4] *See* syl. pt. 1, *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987) ("An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him.").

9

are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference.

Syl. pt. 3, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994).

## III.

## ANALYSIS

Mr. Bevel asserts that the interrogation conducted on December 17, 2010, was in violation of his constitutional right to counsel. The State urges the Court to adopt the United States Supreme Court's holding in *Montejo v. Louisiana*, 556 U.S. 778 (2009), under which the police-initiated interrogation would not have violated Mr. Bevel's right to counsel.

The right to counsel is guaranteed by both the United States Constitution and the West Virginia Constitution. The Sixth Amendment to the United States Constitution declares, "In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." Likewise, the West Virginia Constitution requires that "[i]n all [trials of crimes and misdemeanors], the accused . . . shall have the assistance of counsel." W. Va. Const. art. III, § 14. The Court has explained the importance and purpose of the right:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even

10

the intelligent and educated layman has small and sometimes no skill in the science of the law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every stage of the proceedings against him.

*State ex rel. Sims v. Perry*, 204 W. Va. 625, 630, 515 S.E.2d 582, 587 (1999) (quoting *Powell v. Alabama*, 287 U.S. 45, 68–69 (1932).

The U.S. Supreme Court, in *Miranda v. Arizona*, 384 U.S. 436 (1966), has also declared that the Fifth Amendment to the United States Constitution implicitly provides the right to counsel. *Miranda*, relied on the Fifth Amendment's guarantee that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself" in holding that "the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment." 384 U.S. at 469. The Court continued, "Our aim is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process." *Id.*

The purpose of the Fifth Amendment right to counsel is to protect a defendant's right against self-incrimination. The right "is triggered when a defendant is taken into custody by law enforcement officials who desire to interrogate him." *State v.*

11

*Williams*, 226 W. Va. 626, 629, 704 S.E.2d 418, 421 (2010) (quoting *State v. Hickman*, 175 W. Va. 709, 716, 338 S.E.2d 188, 195 (1985)). A defendant may waive his right to counsel and proceed with the interrogation. If he chooses to invoke his Fifth Amendment right to counsel, all interrogation must cease unless the defendant initiates further communication with the police. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981) ("[A]n accused . . . , having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." ("The *Edwards* rule")). The Fifth Amendment right to counsel attaches before adversarial judicial proceedings are brought against a defendant upon invocation of the right by the defendant.

Once adversarial judicial proceedings commence against a defendant, right to counsel guaranteed by the Sixth Amendment and article III, § 14 attaches. Syl. pt. 1, *Bowyer*, 181 W. Va. 26, 380 S.E.2d 193 ("The Sixth Amendment right to counsel attaches at the time judicial proceedings have been initiated against a defendant whether by way of formal charges, preliminary hearing, indictment, information, or arraignment."); *State ex rel. Riffle v. Thorn*, 153 W. Va. 76, 81, 168 S.E.2d 810, 813 (1969) ("We are firmly of the view that the due process clauses of the Constitutions of the United States and of this State guarantee to one indicted for a felony counsel at every stage of his trial, at least from the date of his arraignment until final judgment is

12

entered."). Thus, the right to counsel may arise in one or both of two contexts: under the Fifth Amendment and/or under the Sixth Amendment.

Because the interrogation at issue in this case took place *after* Mr. Bevel was arraigned, at which time he requested the assistance of counsel, only the right to counsel under the Sixth Amendment and article III, § 14 is at issue in this case.

The interpretation of the Sixth Amendment right to counsel has varied over time in both West Virginia and across the nation. In 1984, in *State v. Wyre*, 173 W. Va. 720, 731, 320 S.E.2d 92, 103 (1984), this Court recognized that the operation of the right to counsel had not been clearly explained by our court or the U.S. Supreme Court: "Regretfully, [the U.S. Supreme Court] offer[s] little guidance as to what limitations on waiver [of the right to counsel] are appropriate." Subsequently, we attempted to clarify the right, holding,

> [W]e do not equate a general request for counsel at the initial appearance before a magistrate as foreclosing in all cases the right of police officials to initiate a further discussion with the defendant to determine if he is willing to waive his Sixth Amendment right to counsel for purposes of procuring a confession.

*Id.* at syl. pt. 3 (in part). The Court continued,

> Because of the higher standard against which the Sixth Amendment right-to-counsel waiver is measured, we hold that once the Sixth Amendment right to counsel has attached,

13

> it can only be waived by a written waiver signed by the defendant. It must also be shown at the time that the waiver is executed that the defendant was aware that he was under arrest and had been informed of the nature of the charge against him.

*Id.* at syl. pt. 4 (in part). Thus, under *Wyre*, police could lawfully initiate interrogation after a defendant had requested counsel at an initial appearance if the police obtained the defendant's written waiver of his right to counsel.

Two years later, the U.S. Supreme Court decided *Michigan v. Jackson*, 475 U.S. 625, 636 (1986), providing the clarity this Court lacked in *Wyre*. The Supreme Court held, "[I]f police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Michigan*, 475 U.S. at 636. The Supreme Court justified its decision by examining both the Fifth and Sixth Amendment rights to counsel. It referred to the *Edwards* rule, quoted *supra*, and decided that

> the reasons for prohibiting the interrogation of an uncounseled prisoner who has asked for the help of a lawyer are even stronger after he has been formally charged with an offense than before. . . . Indeed, after a formal accusation has been made—and a person who had previously been just a "suspect" has become an "accused" within the meaning of the Sixth Amendment—the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation.

14

*Id.* at 631–32. Again looking to the Fifth Amendment right for guidance, the Supreme Court continued, "Just as written waivers are insufficient to justify police-interrogations after the request for counsel in a Fifth Amendment analysis, so too they are insufficient to justify police-initiated interrogations after the request for counsel in a Sixth Amendment analysis." *Id.* at 635.

The Supreme Court's decision in *Michigan* contradicted the law as it stood in West Virginia under *Wyre*. The contradiction was resolved in *State v. Crouch*, 178 W. Va. 221, 358 S.E.2d 782 (1987), and *State v. Barrow*, 178 W. Va. 406, 359 S.E.2d 844 (1987). In *Crouch*, following the guidance of *Michigan*, the Court held, "For a recantation of a request for counsel to be effective: (1) the accused must initiate a conversation; and (2) must knowingly and intelligently, under the totality of the circumstances, waive his right to counsel." Syl. pt. 1, *Crouch*, 178 W. Va. 221, 258 S.E.2d 782. The Court went even further in *Barrow*, finding that "[b]ecause *Wyre* sets a more diminished standard than that set in [*Michigan*], we must overrule *Wyer* to this extent." *Barrow*, 178 W. Va. at 409, 359 S.E.2d at 847. The Court adopted the holding in *Michigan*:

> If police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid because it was taken in violation of the defendant's Sixth Amendment right to counsel. To the extent that *State v. Wyre,* 173 W.Va. 720,

15

320 S.E.2d 92 (1984), is in conflict with this principle, it is overruled.

Syl. pt. 1, *Barrow*, 178 W. Va. 406, 359 S.E.2d 844.

Under *Crouch* and *Barrow*, police could interrogate a defendant after the defendant had asserted his Sixth Amendment right to counsel only if the defendant initiated the conversation with police and only if the defendant knowingly and intelligently waived his right to counsel. *Couch* and *Barrow*, which mirror and, indeed, go beyond the requirements of *Michigan*, have acted as the touchstone on the Sixth Amendment right to counsel in West Virginia for the last twenty-six years. *See State v. Lucas*, 178 W. Va. 686, 364 S.E.2d 12 (1987); *State v. Tenley*, 179 W. Va. 209, 366 S.E.2d 657 (1988); *Bowyer*, 181 W. Va. 26, 308 S.E.2d 193 (1989); *State v. Parker*, 181 W. Va. 619, 383 S.E.2d 801 (1989); *State v. Marcum*, 182 W. Va. 104, 386 S.E.2d 117 (1989); *Williams*, 226 W. Va. 626, 704 S.E.2d 418 (2010).

In 2009, the U.S. Supreme Court issued *Montejo*, overruling *Michigan*. In *Montejo*, the defendant was arrested for his believed participation in a murder. 556 U.S. at 781. Upon his arrest, he was read his *Miranda* rights, he waived rights including his Fifth Amendment right to counsel, and he participated in an interrogation conducted by police detectives. *Id.* He made incriminating statements to the police during the interrogation. *Id.*

16

Four days after his arrest, the defendant was brought before a judge for a preliminary hearing, and pursuant to Louisiana law, the court ordered "the Office of Indigent Defender be appointed to represent the defendant." *Id.* (internal quotation omitted). After the preliminary hearing, the police detectives approached the defendant again, requesting that he assist them in locating the murder weapon. *Id.* The defendant was read his *Miranda* rights a second time, and he once more waived his right to counsel. *Id.* at 782. During the excursion, the defendant made additional inculpatory statements. *Id.* The defendant objected to the admission at trial of the statements he made to police after the preliminary hearing, but the statements were deemed admissible by the court. He was convicted of first-degree murder and sentenced to death. *Id.*

Arguing that the statements made after the preliminary hearing were made in violation of his Sixth Amendment right to counsel, the defendant appealed to the Louisiana Supreme Court. *Id.* The Louisiana Supreme Court affirmed the conviction, reasoning that

> the prophylactic protection of [*Michigan*] is not triggered unless and until the defendant has actually requested a lawyer or has otherwise asserted his Sixth Amendment right to counsel. Because Montejo simply stood mute at his [preliminary] hearing while the judge ordered the appointment of counsel, he had made no such request or assertion.

*Id.* (internal citation omitted).

17

The U.S. Supreme Court rejected the Louisiana Supreme Court's approach finding that it "would lead either to an unworkable standard, or to arbitrary and anomalous distinctions between defendants in different States." *Id.* at 783. The U.S. Supreme Court explained,

> So on one hand, requiring an initial "invocation" of the right to counsel in order to trigger the [*Michigan*] presumption is consistent with the theory of that decision, but . . . would be unworkable in more than half the States of the Union.[5] On the other hand, eliminating the invocation requirement would render the rule easy to apply but depart fundamentally from the [*Michigan*] rationale.

*Id.* at 792 (footnote added). In other words, the U.S Supreme Court appears to have seen itself as being faced with choosing between (1) an application of the Sixth Amendment that would not be uniform among the several states and (2) departing from *Michigan*. It chose to overrule *Michigan*, holding, "In sum, when the marginal benefits of the [*Michigan*] rule are weighed against its substantial costs to the truth-seeking process and the criminal justice system, we readily conclude that the rule does not 'pay its way.' [*Michigan*] should be and now is overruled." *Id.* at 797 (internal citation omitted).

---

[5] In addition to the federal right to counsel, states have also provided their citizens with the right to counsel under their own laws. What that right entails varies by state. *Montejo* illustrates that in Louisiana, counsel is automatically appointed at the commencement of criminal proceedings. In other states, like West Virginia, a defendant must request that counsel be appointed to him.

18

The *Montejo* Court buttressed its holding by attacking the *Michigan* Court's reliance on the Fifth Amendment in supporting its extension of the Sixth Amendment. Stating that "[t]he antibadgering rationale is the only way to make sense of [*Michigan*]'s repeated citations of *Edwards*, and the only way to reconcile the opinion with our waiver jurisprudence," *Id.* at 788, the *Montejo* Court concluded that while "*Edwards* and [*Michigan*] are meant to prevent police from badgering defendants into changing their minds about their rights, . . . a defendant who never asked for counsel has not yet made up his mind in the first instance." *Id.* at 789. The U.S. Supreme concluded by asserting that the protections provided by the *Miranda-Edwards* line of cases are sufficient to protect the right to counsel, finding that the "doctrines ensuring voluntariness of the Fifth Amendment waiver simultaneously ensure the voluntariness of the Sixth Amendment waiver. *Id.* at 795.

One year after the U.S. Supreme Court decided *Montejo*, this Court was asked in *Williams* to revisit *Barrow*. Because the facts of *Williams* did not provide an adequate basis for exploring *Montejo*, we said, "Having concluded that the Sixth Amendment right to counsel was not at issue in this case, we decline the invitation to address the impact the 2009 Supreme Court decision in *Montejo v. Louisiana* may have on our Sixth Amendment jurisprudence." *Williams*, 226 W. Va. at 630 n.6, 704 S.E.2d at 422 n.6. The facts of the case at bar, however, do provide the basis for addressing the impact of *Montejo* on our law, and so we proceed to do so now.

19

The case *sub judice* is controlled by both the Constitution of West Virginia and the Constitution of the United States, and our decision must comply with both constitutions. However, under the primary tenant of federalism—on which our government is based—West Virginia may place higher standards on its police pursuant to its own laws than those required by the federal government. *See, e.g.*, syl. pt. 2, *Pauley v. Kelly*, 162 W. Va. 672, 255 S.E.2d 859 (1979) ("The provisions of the Constitution of the State of West Virginia may, in certain instances, require higher standards of protection than afforded by the Federal Constitution.").

*Montejo* represents a narrower application of the Sixth Amendment right to counsel than the application of the right under *Michigan*. West Virginia may continue to follow *Michigan* without running afoul of *Montejo*. The U.S. Supreme Court recognized as much in *Montejo*, stating, "If a State *wishes* to abstain from requesting interviews with represented defendants when counsel is not present, it obviously may continue to do so." 556 U.S. at 793. Therefore, West Virginia is not bound to adopt *Montejo* as it was bound to adopt *Michigan*; continued application of our *Michigan* line of cases would provide greater protection to citizens' right to counsel than the protections guaranteed by *Montejo*.

Our decision on whether to adopt *Montejo* comes down to one question: Does the right to counsel under the Sixth Amendment to the United States Constitution,

as interpreted in *Montejo*, provide the same right to counsel under article III, section 14 of the West Virginia Constitution?  We find that it does not.

We are bound by the doctrine of stare decisis.  The Court has held, "An appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." Syl. pt. 2, *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 207 S.E.2d 169 (1974).  "Mere disagreement as to how a case was decided is not a sufficient reason to deviate from [stare decisis]." *Id.* at 1029, 207 S.E.2d at 173.  The only changed condition present in this case is that the U.S. Supreme Court has decided *Montejo*, which provides a right to counsel differing from that provided in *Crouch* and *Barrow*.  While the U.S. Supreme Court felt compelled to depart from *Michigan* for the sake of uniformity among the states, a similar conflict does not exist on our individual state level.  Thus, although *Montejo* has altered the benefits of the right to counsel on the federal level, it has not changed the right in such a way that conflicts with the right as guaranteed by *Crouch* and *Barrow*.  Wholesale adoption of *Montejo* would only produce instability in West Virginia's right-to-counsel jurisprudence.

Furthermore, we do not find that our holdings in *Crouch* and *Barrow* represent error.  The U.S. Supreme Court even recognized that the right to counsel within

21

the meaning of *Michigan* may still be viable in jurisdictions that choose to reject *Montejo*. Upon our review of our own case law, we believe that our law is well-reasoned and appropriately ensures that statements made by a defendant during interrogation are voluntary and made with full knowledge of the right to be assisted by counsel.

> [N]o system of criminal justice can, or should, survive if it comes to depend for its continued effectiveness on the citizens' abdication through unawareness of their constitutional rights. No system worth preserving should have to *fear* that if an accused is permitted to consult with a lawyer, he will become aware of, and exercise, these rights.

*Wyre*, 173 W. Va. at 739, 320 S.E.2d at 111 (Harshbarger, J., dissenting) (quoting *Escobedo v. Illinois*, 378 U.S. 478, 490 (1964)). Therefore, we find that stare decisis requires that we sustain *Crouch* and *Barrow*.

We note that much of our case law examining the right to counsel, including *Crouch* and *Barrow*, only discusses the right in terms of the Sixth Amendment to the United States Constitution. Although we did not mention the West Virginia Constitution explicitly, it is clear from the Court's opinions that until now, the right to counsel guaranteed by the Constitution of West Virginia mirrored the right guaranteed by the Sixth Amendment. We now explicitly hold that if police initiate interrogation after a defendant asserts his right to counsel at an arraignment or similar proceeding, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid as being taken in violation of the defendant's right to counsel under article III, section 14 of

22

the Constitution of West Virginia. Our holding today does not change what the right to counsel has entailed pursuant to this state's constitution since 1987, including the ability of a defendant by his or her initiation to knowingly and intelligently waive the right to counsel after the right has previously been invoked, pursuant to *Crouch*.

Under this holding, it is apparent from the undisputed facts in this case that the police-initiated interrogation of Mr. Bevel on December 17, 2010, after he requested the assistance of counsel and after criminal proceedings had commenced against him, was conducted in violation of his right to counsel under article III, section 14 of the Constitution of West Virginia. Accordingly, the circuit court erred by denying Mr. Bevel's motion to suppress the inculpatory statements he made during that interrogation, and Mr. Bevel's conviction and sentence must be reversed.[6]

## IV.

## CONCLUSION

For the reasons set forth above, this Court reverses the circuit court's order entered November 2, 2011, convicting and sentencing the Mr. Bevel. Because that order

---

[6] In addition to arguing that the December 17, 2010, interrogation was conducted in violation of his right to counsel, Mr. Bevel also asserted that the waiver of his right to counsel he signed that day was not knowing, intelligent, and voluntary. Because we find that the police-initiated interrogation was in violation of Mr. Bevel's right to counsel, it is unnecessary to analyze the waiver because the waiver, under our holding, was per se invalid.

was entered pursuant to a *Kennedy* plea, we remand the case for further proceedings consistent with this opinion.

Reversed and Remanded.