# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2014 Term

_____

No. 13-0270

_____

**FILED**

**May 8, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**v.**

**BYRON BLACKBURN,**
**Defendant Below, Petitioner**

_____

Appeal from the Circuit Court of Mercer County
The Honorable William J. Sadler, Judge
Criminal Case No. 12-F-30

**AFFIRMED**

_____

Submitted: April 23, 2014
Filed: May 8, 2014

Ryan J. Flanigan, Esq.                     Patrick Morrisey
Sanders, Austin, Flanigan & Flanigan       West Virginia Attorney General
Princeton, West Virginia                   J. Zak Ritchie
Thomas L. Fuda, Esq.                       Assistant Attorney General
Fuda Law Offices                           Robert D. Goldberg
Princeton, West Virginia                   Assistant Attorney General
Counsel for the Petitioner                 Charleston, West Virginia
                                           Counsel for the Respondent

Valena Beety
WVU College of Law
Morgantown, West Virginia
Counsel for Amicus Curiae
WV Innocence Project and
The Innocence Project, Inc.

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

2. When a person charged in a criminal case has requested the assistance of counsel pursuant to U. S. Const. amend VI and W.Va. Const. art. III, § 14, the police may subsequently initiate a custodial interrogation of the accused regarding a wholly unrelated offense for which he or she has not been charged, provided that, prior to the interrogation, the accused is apprised of his or her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), including the right against compulsory self-incrimination and the right to consult with an attorney.

3. "In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the

opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Syl. pt. 3, *State v. Casdorph*, 159 W.Va. 909, 230 S.E.2d 476 (1976), *vacated on other grounds*, *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982).

**Ketchum, Justice**:

Byron Blackburn ("Blackburn") appeals his conviction in the Circuit Court of Mercer County of robbery in the first degree. Blackburn was indicted for entering a Wendy's restaurant in Bluefield, West Virginia, and attempting to obtain money by holding a machete against the throat of a restaurant employee. Blackburn was sentenced to a forty-year term in the penitentiary.

Raising two assignments of error, Blackburn asks this Court to set aside his conviction and grant a new trial. First, Blackburn contends that his confession to the police should have been excluded from the trial because it was given in violation of his right to counsel and because it was involuntary under the totality of the circumstances. Second, emphasizing that the assailant at Wendy's was in disguise, Blackburn contends that his in-court identification by the employee threatened with the machete was tainted because of suggestion by the State and should also have been excluded from the trial.[1]

---

[1] In addition to the appendix record and the briefs of the parties, this Court is in receipt of a joint *amicus curiae* brief filed by the West Virginia Innocence Project and The Innocence Project, Inc.

Upon review, this Court concludes that Blackburn's assignments of error are without merit. Accordingly, we affirm Blackburn's conviction of robbery in the first degree and his sentence of forty years in the penitentiary.

## I. Factual Background

On November 28, 2011, an assailant wearing a bandana across his face and a hat or hoodie partially covering his head entered a Wendy's Restaurant in Bluefield, West Virginia. The assailant was carrying a machete. The assailant jumped over the counter and walked into the kitchen. He held the machete against the throat of a Wendy's employee, Daniel Back, and demanded money. Two other Wendy's employees, Nikko Jansen and Kip Davis, were in the kitchen and witnessed the assault.

Daniel Back, the assaulted employee, got away from the assailant and ran out of the restaurant through the back door. The two other employees told the assailant that the cash register could not be opened and also ran out the back door. The assailant, obtaining no money, fled the restaurant.

Neither the machete nor the clothing worn by the assailant were ever found. However, video footage of the attempted robbery from Wendy's security camera was downloaded by the Bluefield Police Department and released to the news media. Soon after,

2

the police were contacted by several anonymous callers who indicated that the assailant in the video was Blackburn. No arrest was made at that time.

On the night of December 4, 2011, one week after the attempted robbery, Blackburn made 911 calls from his residence during which he threatened to shoot someone if he did not get a cigarette. Officers from the Bluefield Police Department proceeded to Blackburn's residence and arrested him on a charge of domestic terrorism. The arrest for that offense took place in the early morning hours of December 5, 2011. Blackburn appeared to have consumed alcohol, and cigarettes were found on his dining room table. He later claimed that he made the 911 calls because he wanted to commit suicide by provoking the police to shoot him.

In the course of the arrest, Blackburn sustained a hairline fracture of his forearm and an additional fracture in his elbow. He was taken to Bluefield Regional Medical Center for treatment and subsequently arraigned in magistrate court. During the arraignment, Blackburn completed a printed form upon which he requested court-appointed counsel on the domestic terrorism charge.

The following day, December 6, 2011, while solely in custody on the domestic terrorism charge, Blackburn confessed to the attempted robbery at Wendy's. The confession was audiotaped by a Bluefield police officer.

## II. Procedural Background

In February 2012, the Mercer County grand jury returned a one count indictment charging Blackburn with robbery in the first degree, *i.e.*, attempting to rob Wendy's restaurant by demanding money from Daniel Back, a Wendy's employee, through the threat of deadly force.[2]

## A. The Pretrial Hearing Concerning the Confession

Blackburn filed a motion to suppress his confession, alleging that his Sixth Amendment right to counsel attached upon his December 5, 2011, arraignment on the

---

[2] *W.Va. Code*, 61-2-12(a) [2000], provides:

Any person who commits or attempts to commit robbery by: (1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.

domestic terrorism charge and that, since he had requested counsel on that charge, the police had no right to question him about the attempted robbery at Wendy's restaurant.

In addition, Blackburn alleged that his confession to the attempted robbery was involuntary based on the totality of the circumstances. Blackburn asserted, *inter alia*, that he was interrogated multiple times on December 5th and 6th, 2011, about the robbery and that, during that period, he was in pain from his arm injuries and in a depressed mental state. Moreover, Blackburn contended that the police told him that, if he confessed to the attempted robbery at Wendy's, the police "would make the domestic terrorism criminal charge disappear."[3]

On November 5, 2012, the circuit court conducted a hearing on the motion to suppress. The evidence revealed that, after his arrest on the charge of domestic terrorism, Blackburn was taken to the hospital on December 5, 2011, by police detective Crook for treatment of his arm. Later that day, Blackburn was arraigned on the terrorism charge. The next day, December 6, 2011, Blackburn voluntarily submitted to a polygraph examination concerning the attempted robbery at Wendy's. The examination was under the supervision of Trooper Smith of the West Virginia State Police, and Blackburn's rights were read to him

---

[3] Blackburn noted in the motion to suppress that the domestic terrorism charge was presented to the grand jury in February 2012. He argued, however, that the prosecutor had no desire to pursue the charge.

pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Blackburn signed a waiver of his *Miranda* rights.

Although Blackburn was told that the result of the polygraph examination indicated deception, Blackburn continued to deny any involvement in the attempted robbery. That afternoon, Blackburn spoke with officer Davis who had known Blackburn for five years and was friendly with Blackburn's family. During the conversation, Davis referred to the stress Blackburn was under in his personal life and encouraged Blackburn to be honest about the incident at Wendy's. According to Davis, Blackburn then confessed to the attempted robbery and stated that he did it to obtain money for the Christmas holidays. Officer Davis left the room, and Blackburn was again *Mirandized* by detective Crook. Blackburn also signed another waiver of his *Miranda* rights. Thereafter, he gave an audiotaped confession to the attempted robbery.

Blackburn asserted that he was interrogated nine times between his arrest on the domestic terrorism charge and his audiotaped confession to the attempted robbery. Included in that alleged number is a conversation with detective Crook at the hospital and a conversation with Crook while being driven back to the police department from the hospital. Another alleged conversation took place during the drive back from the polygraph examination. The State disputed Blackburn's assertion that he was interrogated nine times.

6

Moreover, the officers who testified at the hearing, including detective Crook and officer Davis, denied that they told Blackburn that the domestic terrorism charge would be dropped in exchange for his confession.

Blackburn testified at the hearing that his confession was involuntary because he was in pain from his arm injuries and was under stress from various personal problems, including family issues and a conviction for third offense driving while under the influence of alcohol. Moreover, he stated that several of the police interrogations had been conducted without giving him *Miranda* warnings. Finally, although declining to state that an explicit promise was made to drop the domestic terrorism charge, Blackburn testified that the police "said they would do what they could to help me out with it."

At the conclusion of the hearing, the circuit court took the motion to suppress under advisement.

Blackburn's two-day trial began on November 27, 2012. On the first day of trial, the circuit court denied Blackburn's motion to suppress the confession and set forth its reasons *in camera*. Acknowledging that Blackburn had been under arrest and in custody on an unrelated matter, the circuit court found clear evidence that he was *Mirandized* prior to his confession to attempted robbery and that he understood what his rights were. The circuit court stated:

7

[Blackburn] did not appear to be under any duress that would negate the voluntariness of the statements as far as the Court could tell from the testimony elicited [and] did not appear under the influence of alcohol or drugs at the time the statements were taken.

And even though there were statements taken over an extended period of time the Court finds that the purpose of his detention was not for the purpose of obtain[ing] a statement. He was once again being detained on unrelated charges out of an unrelated incident and it wasn't like he was under a constant barrage the entire time that this questioning was taking place.

## B. The *In Camera* Hearing Concerning Identification

Also on the first day of the trial, the circuit court conducted an *in camera* hearing concerning the identification of Blackburn by Daniel Back, the Wendy's employee who was threatened with the machete.

Mr. Back testified that, shortly after the attempted robbery, he gave a statement to the Bluefield police in which he indicated that the assailant wore a hoodie and a bandana across his face. Although only the upper part of the assailant's face was visible, Mr. Back was able to state the assailant's approximate age, height and weight. Thereafter, Mr. Back saw Blackburn's photograph on a news website and learned that Blackburn had confessed to the attempted robbery. Upon seeing the photograph, Mr. Back recognized Blackburn, a white male with blue eyes, as the assailant. However, assuming his evidence was not needed, Mr. Back never contacted the police and had no further involvement in the case until the time of

8

trial. The police never contacted Mr. Back to identify Blackburn through a lineup, showup or photograph array.[4]

During the *in camera* hearing, Mr. Back testified:

> A. . . . I turned around and looked in his face and his eyes. And I could see the skin right here on his cheeks and right here part of his forehead and his eyes, too. . . .
>
> And then, uh, and then I tried to run and he put it against my throat like he told . . . because you could tell, he didn't like pull me back. He just put it against me like to warn me not to run away. And I stood there and he looked at me again and he said give me the money. . . .
>
> Q. Okay. Mr. Back, did the detectives that were investigating this case ever show you any sort of identification lineup or did they show you any photographs?
>
> A. No, but I saw a picture on the news website of the . . . after they arrested him and they showed a picture. And I was able to . . . I recognized his eyes because they're blue. And his skin color is kind of pinkish, reddish tone, kind of I mean you're just able to tell the color of his skin and eyes. I was able to tell when I saw the picture and I was like yeah that's him. . . .
>
> I would say not 100% sure but about 90% because he wasn't masked but, I mean he had mask on but his eyes and his face right here match it. When I looked into them he screamed at me and I just looked straight into his eyes and I could see it.

---

[4] *See* the *West Virginia Eyewitness Identification Act*, *W.Va. Code*, 62-1E-1 [2013], *et seq*. (which sets forth procedures for lineups and showups conducted by law enforcement officers). The Act, inapplicable in this case, has been amended by the Legislature since Blackburn's conviction.

At the conclusion of the hearing, the circuit court ruled that Mr. Back would be allowed to make an in-court identification of Blackburn as the assailant. Acknowledging that Mr. Back's testimony was weak, the circuit court determined that his identification of Blackburn was a question of the weight of the evidence, subject to cross-examination, to be resolved by the jury. The circuit court rejected the assertion that the identification had been suggested by the State.

**C. Trial and Post-Trial Proceedings**

During the trial, Wendy's employees Jansen and Davis were unable to provide a detailed description of the assailant, although Davis testified that the assailant had blue eyes. Mr. Back, however, made an in-court identification of Blackburn and told the jury that there was a "nine out of ten chance" that Blackburn was the person who assaulted him with the machete. In addition to Mr. Back, the State called detective Hamm and officer Crook who testified that the tread on a pair of Rocky-brand boots found at Blackburn's residence was consistent with a tread pattern discovered on the counter at Wendy's during the investigation of the attempted robbery.

During the State's case-in-chief, Blackburn's audiotaped confession was played for the jury. In addition, the jury saw the video footage from Wendy's showing the attempted

10

robbery. When the State rested its case, Blackburn made a motion for a judgment of acquittal. The motion was denied.

Although Blackburn did not testify, the validity of the confession and the identification testimony were challenged before the jury. With regard to the confession, an audiotape of the 911 calls Blackburn made on December 4, 2011, was played to assist the jury in determining Blackburn's state of mind while he was in police custody and confessed to the attempted robbery. In addition, witnesses were called who stated that Blackburn had been facing a number of personal problems and had once confessed to a murder he did not commit in order to be arrested and have a place to stay.

On the second day of trial, the jury found Blackburn guilty of robbery in the first degree. Thereafter, Blackburn filed a motion for a new trial. *See* W.Va. R. Crim. P. 33. (authorizing a new trial "if required in the interest of justice"). Primarily addressing the identification issue, the motion alleged that Mr. Back's in-court identification of Blackburn was tainted by Mr. Back's out-of-court viewing of the news website, *i.e.*, because Mr. Back saw Blackburn's photograph on the internet and knew about the confession, Mr. Back's in-court identification should have been suppressed.

A hearing on the motion for a new trial was conducted on January 4, 2013.  Denying

the motion, the circuit court stated that, based on the totality of the circumstances, including

Mr. Back's identification testimony, Blackburn received a fair trial.  On January 23, 2013,

the circuit court entered an order sentencing Blackburn to a penitentiary term of forty years

for robbery in the first degree.[5]

This appeal followed.

## III. Standards of Review

The standard of review pertaining to the denial of Blackburn's motion for a new trial

is found in syllabus point 3 of *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000):

> In reviewing challenges to findings and rulings made by a circuit court,
> we apply a two-pronged deferential standard of review.  We review the rulings
> of the circuit court concerning a new trial and its conclusion as to the existence
> of reversible error under an abuse of discretion standard, and we review the
> circuit court's underlying factual findings under a clearly erroneous standard.
> Questions of law are subject to a de novo review.

---

[5] The circuit court noted in the order that, although "the witness admitted
shortcomings in initial identification  .  .  .  there is not a state procedure at issue," since
the out-of-court identification was because of a news report on the internet.

Moreover, in addition to imposing the forty year sentence, the circuit court
sentenced Blackburn to a penitentiary term of one to three years for his conviction of third
offense driving while under the influence of alcohol.  The latter conviction arose from a
separate indictment.  The January 23, 2013, order directed that the forty year sentence and
the one to three year sentence would run concurrently.

12

*Accord* syl. pt. 1, *State v. Jones*, 230 W.Va. 692, 742 S.E.2d 108 (2013).

Additional standards of review directly relating to the two assignments of error raised by Blackburn are set forth below.

## IV. Discussion

## A. The Admissibility of the Confession

It is well settled that the State has the burden of proving that the confession of the accused was voluntarily given. That principle is set forth in syllabus point 5 of *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975): "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case." *Accord* syl. pt. 2, *State v. Hanson*, 181 W.Va. 353, 382 S.E.2d 547 (1989). In determining whether the voluntariness of the confession has been established, the trial court "must assess the totality of all the surrounding circumstances." Syl. pt. 7, in part, *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994). *Farley* addresses review by this Court in syllabus point 2:

> This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

13

*Accord* syl., *State v. Finley*, 229 W.Va. 690, 735 S.E.2d 565 (2012); syl. pt. 1, *State v. Boxley*, 201 W.Va. 292, 496 S.E.2d 242 (1997), *cert. denied*, 525 U.S. 863 (1998). *See State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995) (In reviewing the denial of a motion to suppress, this Court considers "the evidence in the light most favorable to the prosecution.")

Blackburn asserts in his reply brief, for the first time on appeal, that his confession to the attempted robbery at Wendy's should have been suppressed because, the day before he gave the confession, he requested court-appointed counsel on the domestic terrorism charge. Specifically, Blackburn asserts:

> [T]he Bluefield City Police were permitted to speak with Mr. Blackburn regarding the robbery at Wendy's. However, during the 9th interrogation on December 6, 2011, the Bluefield City Police promised to help Mr. Blackburn with regard to the domestic terrorist charge in return for a confession to the robbery at Wendy's. At that point in time, *the State melded the domestic terrorism charge with the robbery charge* by making a promise to help Mr. Blackburn on the domestic terrorism charge in return for his confession to the Wendy's robbery.

(Emphasis added)

In support, Blackburn relies on syllabus point 5 of *State v. Bevel*, 231 W.Va. 346, 745 S.E.2d 237 (2013), which states:

14

If police initiate interrogation after a defendant asserts his right to counsel at an arraignment or similar proceeding, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid as being taken in violation of the defendant's right to counsel under article III, section 14 of the Constitution of West Virginia.[6]

Though only raised in the reply brief, we address this issue pursuant to our obligation to do so under *Farley*. We note, however, that Blackburn's factual basis for this issue was disputed below. The circuit court resolved the issue in favor of the State and allowed the issue of voluntariness to be submitted to the jury.

The circumstances in *Bevel* were very different from those in the current matter. *Bevel* did not involve an accused's request for counsel followed by police interrogation where the accused was considered a suspect in a completely unrelated offense. In *Bevel*, the accused, charged with sexually assaulting a child, requested court-appointed counsel. Soon after, he waived his right to counsel and gave the police a statement that he had digitally penetrated the child. This Court concluded in *Bevel* that the accused's motion to suppress the statement should have been granted pursuant to article III, § 14 of the Constitution of West Virginia, because the interrogation leading to the statement took place after the accused was arraigned, at which time he requested counsel.

---

[6] In *Bevel*, this Court confirmed that the Constitution of West Virginia may, in certain instances, place higher standards on the police than those required by the Constitution of the United States. 231 W.Va. at _, 745 S.E.2d at 246.

15

By contrast, in *Texas v. Cobb*, 532 U.S. 162 (2001), the accused was indicted for the burglary of a home, and was represented on the charge by court-appointed counsel. A mother and baby who lived in the home were missing. While free on bond on the burglary charge, the accused told his father he had committed murder. The accused was taken into custody and *Mirandized*. The accused waived his rights and confessed to murdering the mother and the baby. The accused asserted that his confession should have been suppressed because it was obtained in violation of his right to counsel, which he claimed attached when counsel was appointed in the burglary case.

In *Cobb*, even though the burglary and the alleged murders were related factually, the Supreme Court of the United States, emphasizing that burglary and murder are legally separate offenses, held that the accused's right to counsel, in regard to the burglary case, did not bar the police from interrogating the accused with respect to the murders. Therefore, the confession to the murders was admissible.

In *Cobb*, the Court recognized that "a defendant's statements regarding offenses for which he had not been charged were admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses." 532 U.S. at 167-68 (citing, *McNeil v. Wisconsin*, 501 U.S. 171 (1991)). The *Cobb* opinion clarified that the defendant or suspect must, nevertheless, be "apprised of his rights against compulsory self-incrimination and to

16

consult with an attorney before authorities may conduct custodial interrogation." 532 U.S. at 171.[7] Moreover, the opinion recognized the interest of society "in the ability of police to talk to witnesses and suspects, even those who have been charged with other offenses." 532 U.S. at 172.

This Court finds the reasoning in *Texas v. Cobb* and *McNeil v. Wisconsin* persuasive in these circumstances and not in conflict with our opinion in *Bevel*. Accordingly, we hold that when a person charged in a criminal case has requested the assistance of counsel pursuant to U. S. Const. amend VI and W.Va. Const. art. III, § 14, the police may subsequently initiate a custodial interrogation of the accused regarding a wholly unrelated offense for which he or she has not been charged, provided that, prior to the interrogation, the accused is apprised of his or her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), including the right against compulsory self-incrimination and the right to consult with an attorney. We stress, however, that the subsequent interrogation must involve a wholly unrelated offense.

---

[7] In this case, Blackburn was *Mirandized* twice on December 6, 2011, prior to giving his audiotaped confession to the attempted robbery, once at the time of the polygraph examination and, later, by detective Crook. The testimony is in conflict as to whether the Bluefield police interrogated Blackburn about the attempted robbery prior thereto on December 5, 2011, or simply informed him that he was a suspect in the case. Much of that testimony was presented during the pretrial hearing. Upon review, this Court finds no reason, in the context of *Miranda*, warranting a reversal of the circuit court's ruling that Blackburn's confession was admissible.

17

Applying this holding, Blackburn's assertion is without merit. The officers who testified at the hearing, including detective Crook and officer Davis, denied that they told Blackburn that the domestic terrorism charge would be dropped in exchange for his confession. Moreover, even though the circuit court stated that there may have been "some vague promises" concerning the domestic terrorism charge, the circuit court found insufficient evidence of coercion and determined the confession to be voluntary. Under the evidence before this Court, it cannot be said that the State melded or co-mingled the offenses in order to obtain the confession. The charges of domestic terrorism and the attempted robbery at Wendy's were not related factually in this case, and they are legally separate offenses.

Furthermore, in *State ex rel. Sims v. Perry*, 204 W.Va. 625, 515 S.E.2d 582 (1999), this Court reaffirmed the principle that the Sixth Amendment right to counsel "generally does not attach prior to the initiation of judicial proceedings by way of formal charges, preliminary hearing, indictment, information, or arraignment." 204 W.Va. at 630, 515 S.E.2d at 587. In the present case, no formal charges had been initiated on the attempted robbery charge during the period in question.

Finally, this Court is of the opinion that the State met its burden of proving by a preponderance of the evidence that Blackburn's confession was voluntary.

18

Blackburn was *Mirandized* twice prior to the confession (when he took the polygraph examination and, later, by detective Crook) and was not found by the circuit court to have been incapacitated or under coercion. Earlier, Blackburn had been told that the result of the polygraph examination indicated deception. However, there is no evidence in the appendix record showing the result of the test. In *Farley*, we noted that "merely telling the defendant that he did not do well on a polygraph examination without further elaboration" is not likely to encourage an innocent person to confess. 192 W.Va. at 257 n. 13, 452 S.E.2d at 60 n. 13. Moreover, the officers denied, and the circuit court did not find, that they told Blackburn that the domestic terrorism charge would be dropped in exchange for his confession. According to the circuit court, even if "vague promises" were made in that regard, the statements were insufficient to render the confession involuntary. Upon the totality of the circumstances, the circuit court's decision to admit Blackburn's confession in evidence was within the parameters of sound discretion.

## B. The Admissibility of the Identification

In his second assignment of error, Blackburn contends that Daniel Back's identification testimony was tainted and unreliable and should have been excluded from the trial.

19

The principal standard of review in this area of the law is set forth in syllabus point 3 of *State v. Casdorph*, 159 W.Va. 909, 230 S.E.2d 476 (1976), *vacated on other grounds*, *State v. Persinger*, 169 W.Va. 121, 138-39, 286 S.E.2d 261, 271-72 (1982):

> In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Accord* syl. pt. 17, *State v. Blevins*, 231 W.Va. 135, 744 S.E.2d 245 (2013).

Here, the police never contacted Mr. Back to identify Blackburn through a lineup, showup or photograph array. Nevertheless, Blackburn asserts that the State engaged in impermissible suggestive conduct when the prosecutor verbally prompted Mr. Back during the *in camera* hearing to assist Mr. Back in identifying Blackburn as the assailant. Blackburn emphasizes the following question by the prosecutor during the *in camera* hearing: "When you indicate yeah it's him do you mean that Byron Blackburn the defendant [who is] seated here in court is the person that attacked you at the Wendy's?"

It should be obvious that prosecutors should not phrase a question in such a manner as would give any indication where the defendant is seated when seeking in-court

20

identification from a witness. In this case, however, the question was followed by additional, more general questions from the prosecutor asking Mr. Back to state where Blackburn was seated in the courtroom and which person he was within "a bunch of gentlemen seated over there." Upon review, the circumstances of the *in camera* hearing do not show that the prosecutor communicated the identity of the assailant to Mr. Back. In any event, at neither the *in camera* hearing, nor when the identification was again made at trial, did Blackburn make a contemporaneous objection to alleged verbal prompting by the State. *See State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996) (The raise or waive rule is "premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs."). Blackburn's argument is unconvincing.

Blackburn also contends that Mr. Back's in-court identification was tainted by Mr. Back's out-of-court viewing of the news website, *i.e.*, because Mr. Back saw Blackburn's photograph on the internet and knew about the confession, Mr. Back's in-court identification should have been suppressed. The circuit court considered the issue *in camera*, as well as in the context of Blackburn's motion for a new trial. The circuit court determined that Mr. Back's identification testimony was admissible and subject to the weight assigned to it by the jury.

21

During the trial, Mr. Back told the jury:

> Q. . . . So his face was right there in your face?
>
> A. Yes.
>
> Q. Did he have it covered?
>
> A. He only had some kind of bandana pattern thing. It was just covering the mouth part and part of his nose but you could still see like the bridge, parts of his cheekbone right here and around his eyes. . . .
>
> Q. Would you say you got a good look at his eyes and his face?
>
> A. Yes. . . .
>
> Q. So you think there's a nine out of ten chance in your opinion that Byron Blackburn is the person who assaulted you?
>
> A. Yes.

Moreover, on cross examination, Back stated:

> Q. . . . [Y]ou saw on the internet that he had been arrested for that, correct?
>
> A. Yes.
>
> Q. Okay. So then you thought, oh yeah, that's the guy who robbed me.
>
> A. I didn't think oh yeah that's the guy because he got arrested. I thought, oh yeah, I recognize his eyes and his skin color.

In view of that testimony, this Court is of the opinion that the impact of the internet photograph and Mr. Back's knowledge of the confession were for the jury to consider and

22

balance against Mr. Back's recollection of the actual events at Wendy's. Accordingly, we find this assignment of error to be without merit.

## V. Conclusion

Prior to trial, the circuit court conducted thorough evidentiary hearings on both the confession and the identification issues and found Blackburn's assertions to be without merit. Upon review, this Court concludes that the circuit court's rulings should not be disturbed. Accordingly, Blackburn's conviction of robbery in the first degree and sentence are affirmed.

Affirmed.